320 P.2d 464

BLAKELY OIL, Incorporated, a corporation, Appellant,

v.

WELLS TRUCKWAYS, Ltd., a corporation, and Transport Indemnity Company, a corporation, Appellees.

No. 6185.

Supreme Court of Arizona.

Jan. 14, 1958.

Moore & Romley and Struckmeyer, Whitney & Perry, Phoenix, for appellant.

Snell & Wilmer, Phoenix, for appellees.

CHARLES P. ELMER, Superior Court Judge.

This is an appeal from order of the trial court granting the motion of plaintiffs-appellees to set aside the verdict of the jury and the judgment entered thereon and granting them a new trial.

By their complaint, plaintiffs seek to recover more than $45,000 in damages allegedly suffered through the total or partial destruction of certain trucks and equipment owned by plaintiff Wells Truckways, Ltd., as a result of a collision with defendant-appellant's tanker. The parties will be designated as they appear in the trial court.

It appears that at approximately 8:45 p. m. of September 26, 1952, two large trucks with trailers attached belonging to the plaintiff Wells Truckways, Ltd., were proceeding in a westerly direction on the Wickenburg-Blythe Highway (U.S. 60–70), one-

fourth to one-half mile apart, at a speed of 50–54 miles per hour. The first truck was driven by E. L. Carson, the second by Charles L. Richmond. At the same time, defendant's employee, Thomas E. James, who lost his life in the collision, was driving tank equipment of the defendant loaded with gasoline in an easterly direction on said highway. At a point some 17 miles west of Salome, Arizona, near a settlement known as Desert Wells, the tanker struck a cow which had come upon the highway, went out of control, crossed to the other side of the highway, and collided with plaintiff's trucks, whereupon the tanker exploded, overturning on its side across the center of the highway. The tank equipment hit plaintiff's first truck around the left door, crashed into its trailer, whipped across and down the road and into plaintiff's second truck, spraying gasoline over the entire scene. The road was dry, straight and comparatively level at point of impact and the conflagration could be seen for a distance of three to four miles.

The highway is unfenced at this place and is adjoined by open livestock range. It is posted with "Watch for Cattle" signs in this area and one such sign was then located on the south side of the highway, where it was passed by appellant's tanker, just west of Desert Wells and approximately 150–200 yards from point of the accident.

The only eyewitness who testified to this accident, other than plaintiffs' drivers, was one Carl Freeburg, a ranch foreman who lived at Desert Wells and who was standing on the north side of the highway at the time the accident occurred. He testified he stood approximately twenty feet away from defendant's tanker as it passed by in the eastbound lane on the south side of the highway; it was traveling at a moderate rate of speed. He noticed the driver; he was awake; they exchanged greetings by nodding to each other. As this equipment passed him, he looked easterly and saw the cow on the north half of the road; she took three or four steps across the highway and was standing in the center of the south lane when struck by defendant's equipment. The cow was plainly visible to him after the tanker passed, as its lights enabled him to see the animal; he did not actually see the tanker hit the cow because of the size of the tanker but he heard the collision.

Freeburg further testified that at no time did defendant's driver apply his brakes; he could not say whether or not he swerved or turned because immediately after striking the cow he heard another thud and saw the tanker glance off of plaintiffs' truck.

It is Freeburg's testimony, although he made no measurements, that he was standing 175 to 200 feet from the point where the cow was crossing the highway; that when he first observed it, the tanker was perhaps

halfway between him and the cow; the tanker was almost right on it.

Mr. E. L. Carson was the driver of the equipment of plaintiffs which was in the lead at the time of this accident. He testified that he first saw the cow involved when he was some distance easterly from the accident scene, perhaps 400 feet; she was on the shoulder heading onto the highway. He flicked his clearance lights twice to warn the following driver, checked his position in the rear view mirror and started to slow down. He saw defendant's tanker approaching from the west and began to give it close attention as the cow continued across the highway and stopped in the eastbound lane. When Carson realized defendant's equipment was going to hit the cow, he attempted to pull entirely off the highway to the north. The cow was plainly visible to him the whole time. He observed the tanker's headlights were on high beam when he first saw them; that they were then transferred to low beam as his rig approached.

The other Wells driver, one Charles L. Richmond, testified that the equipment driven by Carson was about a half mile ahead of him; as they got close to Desert Wells, Carson blinked his lights twice, which told him that Carson was slowing down. He observed the lead equipment was slowing down considerably, and was being headed off of the highway; he could see the brake lights and that the equipment was getting off on the shoulder. He was not close enough to judge how fast the lead equipment was going, but, observing it, he started slowing down and also pulling off the highway. When both these pieces of equipment were practically stopped and quite a ways off the roadway, it appeared to this witenss that the Carson equipment seemed to fly apart; it got real bright; then he felt an impact on his own truck.

Highway Patrolman Harold E. Moore was called to the scene of the accident immediately after its occurrence; he made various measurements and testified to various physical conditions found by him. He found a cow lying in the highway, approximately seven feet north of the south side of the pavement. He found no brake marks west of the point where the cow was lying. It was impossible, he said, to determine where the vehicles had come together; the pavement was on fire and it had cracked. The area is one where cattle are quite frequently seen alone the highway.

It appeared to this witness that the tanker traveled about 140 feet after hitting the cow to where it struck the rig operated by Carson, and another 182 feet to where it struck the equipment operated by Richmond; then approximately 90 feet more to where it turned over on the highway.

There is but one assignment of error, which is that the trial court abused its dis-

278

cretion and committed reversible error in granting the motion for new trial for the reason there was no evidence of negligence on defendant's part, and the clear preponderance of the evidence substantiated the verdict. Defendant relies on the proposition of law that it is an abuse of discretion for the trial court to set aside a verdict and grant a new trial where there is no evidence to support a contrary verdict or where the clear preponderance of the evidence is in favor of the verdict rendered and the probative force of the evidence demonstrates that the action of the trial court was wrong and unjust.

■ We stated in General Petroleum Corp. v. Barker, 77 Ariz. 235, 244, 269 P.2d 729, 735:

"We have examined the cases * * * and have come to this conclusion: A motion for new trial upon the ground the verdict is against the weight of the evidence, is addressed to the sound discretion of the trial court, and in ruling thereon the trial court may weigh the evidence. Upon appeal, the order granting a new trial will be upset where it is affirmatively shown the order is unreasonable and a manifest abuse of discretion under the state of the record and the circumstances of the case."

In Smith v. Moroney, 79 Ariz. 35, 39, 282 P.2d 470, 472, we held that

"We will not disturb an order granting a new trial unless the probative force of the evidence clearly demonstrates that the trial court's action is wrong and unjust and therefore unreasonable and a manifest abuse of discretion."

■ The trial judge, in ruling on the new trial motion, specifically found that the evidence disclosed no facts upon which the plaintiffs could be charged with either negligence or contributory negligence but concluded the verdict was contrary to the weight of the evidence and that had he tried the case he would have found for the plaintiff. Clearly, the court correctly ruled out contributory negligence. Appellant argues however that this was the sole reason for the trial court's conclusion that the verdict is against the weight of the evidence. This argument is not sound for the reason that the court could not have found for the plaintiff, as the judge stated he would have, unless he found the defendant was negligent. In view of the evidence as heretofore related, we are clearly of the opinion the trial court did not abuse its discretion in granting the new trial. There was ample evidence of defendant's negligence and the court was entirely justified in determining there was no preponderance of the evidence to the contrary.

Plaintiffs in their brief complain of the action of the trial judge in denying their

motion for judgment notwithstanding the verdict. It appears that upon the conclusion of the presentation of evidence plaintiffs had moved the trial court to direct a verdict in their favor on the question of liability, which motion was denied. After verdict and judgment, they moved for judgment notwithstanding the verdict on the issue of liability and for a new trial on the issue of damages; in the alternative, for a new trial on all issues. It was this last motion which the court granted.

■ Appellees have set forth a cross assignment of error in their brief and a proposition of law in support thereof. No matter how meritorious such may be under the facts of this case, it is not within our power to consider it because no cross appeal was taken by plaintiffs. Inasmuch as the perfecting of an appeal within the time and in the manner provided by law is essential in order to confer jurisdiction on this court, we can give plaintiffs no such relief. Maricopa County v. Corporation Commission, 79 Ariz. 307, 289 P.2d 183.

The order of the trial court granting the motion for new trial is hereby affirmed.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.

Justice STRUCKMEYER having announced his disqualification, the Hon. CHARLES P. ELMER, Judge of Superior Court, Mohave County, was called to sit in his stead.