899 P.2d 199

**Carole A. SMITH, a married woman, Plaintiff–Appellant,**

v.

**Lee Finley JOHNSON and Betty Lou Johnson, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 93–0330.

Court of Appeals of Arizona, Division 1, Department A.

July 18, 1995.

As Corrected July 21, 1995.

David Brnilovich, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Lisa M. Sommer and Christopher Robbins, Phoenix, for defendants-appellees.

OPINION

WEISBERG, Judge.

This is an automobile accident case in which Carole A. Smith ("plaintiff") appeals from the denial of her motion for new trial following a judgment on a jury verdict for Lee Finley Johnson ("defendant"). In concluding that plaintiff should have been granted a new trial, we hold that a driver's duty to comply with a safety statute, Ariz.Rev.Stat. Ann. ("A.R.S.") section 28–772, is non-delegable and therefore a driver cannot be absolved of liability by relying on the directions of another driver.

### Facts and Procedural History [1]

Cars driven by plaintiff and defendant collided at the intersection of 51st Avenue and Mountain View Road. At its intersection with Mountain View, 51st Avenue has two northbound lanes, two southbound lanes, and a center turning lane. As was done at trial, we will refer to the lanes thus: the southbound curb lane is lane A; the southbound interior lane is lane B; the center turn lane is lane C; the northbound interior lane is lane D; and the northbound curb lane is lane E. The intersection was not controlled by a traffic signal. At this juncture, 51st Avenue is straight and flat.

Witness Charles Merling was driving north in lane D. As he approached the intersection, a red Mercedes cut in front of him from lane E and stopped in lane D, in preparation for a left turn onto Mountain View. The Mercedes was stopped at a diagonal, mostly in lane D and partially in lane C. Although Merling and plaintiff testified that the Mercedes was not impeding traffic in lane E, defendant testified that the rear portion of the Mercedes was blocking the curb lane. Merling stopped his Nissan Pathfinder behind the Mercedes, and a Ford pickup truck with a camper shell stopped behind Merling.

At this time, defendant was driving his wife's Lincoln Town Car south on 51st Avenue, preparing to turn left onto Mountain View. He stopped in the left-turn lane, lane C. The Pathfinder and the pickup truck

---

1. Because this is an appeal following a jury trial, we view the evidence in the light most favorable to upholding the judgment. *McFarlin v. Hall*, 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980).

both were higher profile vehicles than defendant's Lincoln, and blocked defendant's view south on 51st Avenue. There were no cars behind defendant's car. In his brief, defendant asserts:

> At that point, the cars had essentially reached an impasse: Mr. Johnson could not turn left because he could not see past the Pathfinder and the brown pickup; the red Mercedes could not turn left because of the angle of the intersection and the presence of Mr. Johnson's car; and Mr. Johnson could not turn back into the southbound lanes of North 51st Avenue because of the angle of his car and the presence of the red Mercedes.

Plaintiff was then driving north on 51st Avenue, approaching Mountain View in her 1989 Buick Skylark, at or below the posted speed limit of 40 miles per hour. Seeing the pickup truck and Pathfinder stopped near the intersection, she took her foot off the accelerator pedal and slowed to approximately 35 miles per hour.

Defendant thought he saw plaintiff's car prior to the accident, heading north in lane D. After that, he lost sight of her car because, he testified, the driver of the Mercedes was waving for him to make his turn.

As plaintiff was approaching, the driver of the Mercedes waved to defendant to go ahead and make his left turn, which defendant did, relying on that signal in deciding to make the turn. Defendant thought he had accounted for all the cars he had seen, thought the angled position of the red Mercedes would prevent any cars from passing in the northbound curb lane, and thought that the driver of the red Mercedes could see behind him because he was motioning for defendant to make his turn. As he moved forward, defendant continued to check the northbound lanes. He testified on cross-examination:

Q. [By plaintiff's counsel] And at that point the driver in this Mercedes waved you across?

A. Yes.

Q. Did you rely on that?

A. Absolutely.

Q. Did you look?

A. I did everything I could.

Q. Did you double-check down here in Lane D after they waved?

A. I was checking all the time. When you say double-check, it was—yes. To answer your question, I am double-checking all the time. I'm—I'm looking for everything that's going on.

As defendant turned, plaintiff's car collided nearly head-on with his car. The collision involved the right front of defendant's car and the entire front of plaintiff's. Plaintiff had not seen defendant's car until a "split-second" or "immediately" before impact, and had no time to apply the brakes. Similarly, defendant did not see plaintiff's car until a "microsecond" before impact. He saw her car as a blur and had no time for evasive maneuvering.

Following the accident, plaintiff brought this lawsuit. Defendant filed a notice of nonparty at fault, referring to the driver of the Mercedes, who left the scene of the accident and was never identified. The matter proceeded to mandatory arbitration, with the arbitrator awarding plaintiff $23,000 in damages. Defendant appealed for a trial de novo.

Prior to trial, plaintiff filed a motion in limine seeking to exclude testimony concerning the actions of the Mercedes driver, which the court denied. Following trial, the jury returned a verdict for defendant. Pursuant to Rule 59(a)(8), Arizona Rules of Civil Procedure, plaintiff filed a motion for new trial on the ground that the verdict was contrary to the weight of the evidence. The court denied the motion and entered judgment in favor of defendant. Plaintiff filed a timely notice of appeal from both the judgment and the order denying her motion for new trial. We have jurisdiction pursuant to A.R.S. section 12–2101(B) and (F)(1).

### *Discussion*
### I. WAS THE VERDICT CONTRARY TO THE WEIGHT OF THE EVIDENCE?

The greatest possible discretion is given the trial court with respect to its ruling on a motion for new trial because, like the

jury, it has had the opportunity to hear evidence and observe the demeanor of witnesses. *Mammo v. State*, 138 Ariz. 528, 533–34, 675 P.2d 1347, 1352–53 (App.1983); *accord Reeves v. Markle*, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978). A motion for new trial upon the ground that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court, whose ruling thereon will be upset only where it is shown affirmatively that the order is unreasonable and a manifest abuse of discretion under the state of the record and the circumstances. *Blakely Oil, Inc. v. Wells Truckways, Ltd.*, 83 Ariz. 274, 278, 320 P.2d 464, 466 (1958).

■ In a negligence action, the plaintiff has the burden of proving duty, breach of standard of care, proximate cause, and damages. *See, e.g., Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 706 P.2d 364 (1985). The parties do not dispute that defendant owed plaintiff a duty of due care, and defendant has not questioned the fact that plaintiff suffered damages from the accident. Therefore, we must consider whether defendant's actions breached the standard of care and were a proximate cause of the accident. In doing so, we must determine whether there was evidence from which the jury could conclude that defendant's turn was neither negligent nor a proximate cause of the accident. Despite the standard of review, we find that, in the unusual circumstances presented here, the verdict was patently against the weight of the evidence.

### A. Proximate Cause

■ A plaintiff must show a reasonable connection between the defendant's act or omission and the plaintiff's injury or damages. *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). "The defendant's act or omission need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." *Id.* (citing *Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983)). To establish proximate cause, a plaintiff "need only present

probable facts from which the causal relationship reasonably may be inferred." *Id.; see also Wisener v. State*, 123 Ariz. 148, 150, 598 P.2d 511, 513 (1979) (stating that plaintiff need not negate entirely the possibility that defendant's conduct was not a cause). The question of proximate cause is usually a question of fact for the jury. *Robertson*, 163 Ariz. at 546, 789 P.2d at 1047.

In this case, plaintiff was driving her car, below the posted speed limit, in a through lane. Defendant was blindly making a left-hand turn across plaintiff's lane of travel. Both drivers testified that they did not see the other until the collision and that neither party had an opportunity to take evasive measures. Under these circumstances, when plaintiff's vehicle was where it was entitled to be and she could not have avoided the accident, a cause of the accident must have been defendant's failure to yield when making a left hand turn, and his driving into a lane of traffic when his vision was obscured.

■ Defendant, however, contends that the jury could have concluded that plaintiff's failure to slow down as she approached the area was a superseding cause of the accident. He is correct that a defendant may be relieved of liability for his negligence when another's actions are a superseding cause of an injury. *See, Rourk v. State*, 170 Ariz. 6, 12, 821 P.2d 273, 279 (App.1991). (citations omitted). Notwithstanding, a superseding cause must be an occurrence that is "both unforeseeable and ... with the benefit of 'hindsight' ... may be described as abnormal or extraordinary." *Id.* (quoting *Rossell v. Volkswagen of America*, 147 Ariz. 160, 169, 709 P.2d 517, 526 (1985), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986)).

In the instant case, even if plaintiff ought to have slowed down as she approached the area where traffic was backed-up, her failure to do so could not have been a superseding cause of the accident because it did not occur *after* defendant's turn, but rather either before or simultaneously with it. Moreover, plaintiff's presence in the approaching lane was not unforeseeable to defendant, nor was it abnormal or extraordinary. Accordingly, the only reasonable conclusion is that defen-

dant's negligence was a proximate cause of the accident.

## B. Breach of Standard of Care

Plaintiff argues that the only reasonable conclusion a jury could reach is that defendant breached the standard of care because he violated the following safety statute:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

A.R.S. § 28–772.

"[A] breach of a statute intended as a safety regulation is not merely evidence of negligence but is negligence per se." *Brannigan v. Raybuck*, 136 Ariz. 513, 517, 667 P.2d 213, 217 (1983).

Defendant responds that the jury may have concluded that he did not violate the statute because he either (1) relied on the signal from the Mercedes driver in waving him to make his left turn, or (2) executed his turn with due care. We therefore must consider whether the jury could reasonably have found that defendant did not violate A.R.S. section 28–772.

### 1. Non–Delegability of Statutory Responsibility

First, we hold that defendant's reliance upon a third party's act assuring him that the coast was clear cannot excuse defendant's failure to yield the right of way. In holding that a driver may not delegate this responsibility, we follow the lead of all the courts that have considered this question.

For example, in *Van Jura v. Row*, 175 Ohio St. 41, 191 N.E.2d 536 (1963), the Ohio Supreme Court stated the issue thus:

Can one who is waiting to make a left turn depend upon the action of another motorist and absolve himself from liability ... by showing that he was invited to proceed in his left turn by such other motorist, who, at that time, had the right to proceed uninterruptedly in the direction in which he was headed?

175 Ohio St. at 43, 191 N.E.2d at 537–38. Relying in part on an Ohio highway safety statute,[2] the court concluded that the motorist could not absolve himself from liability by relying on the actions of the other motorist. The court explicitly held that the defendant could not

> avoid the consequences of his failure to exercise due care owed to plaintiff by a claim that the act of a third-party stranger caused the collision....

[Defendant's] obligation, as he moved left across the path of other vehicles, was to keep a lookout for such traffic, and not depend upon the act of another. In that respect, the conduct required by Section 4511.39, Revised Code, cannot be delegated to another, and thereby absolve the offending party from proceeding with due care. When [the defendant], without exercising any care, proceeded to complete his left turn, and thereby collided with the vehicle being operated by Bires, he became guilty of negligence as a matter of law.

*Id.* 175 Ohio St. at 45, 191 N.E.2d at 538. All reported cases on this point are in accord. *See, e.g., id.; Boyd v. Smith*, 390 So.2d 994 (Miss.1980); *Myers v. Bright*, 327 Md. 395, 609 A.2d 1182 (1992) (and cases cited therein).

In *Myers*, under a statute substantially identical to A.R.S. section 28–772,[3] the Maryland Court of Appeals followed similar reasoning. There, plaintiff, a southbound motorist, was struck by defendant, who was northbound attempting to make a left turn

---

**2.** No person shall turn a vehicle ... from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway....
Ohio Rev.Code Ann. § 4511.39 (cited in *Van Jura*, 175 Ohio St. at 44, 191 N.E.2d at 538).

**3.** Turning left.—If the driver of a vehicle intends to turn to the left in an intersection or

into an alley or a private road or driveway, the driver shall yield the right-of-way to any other vehicle that is approaching from the opposite direction and is in the intersection or so near to it as to be an immediate danger.
Md.Transp.Code Ann. § 21–402(a) (1987) (cited in *Myers*, 327 Md. at 399, 609 A.2d at 1184).

across plaintiff's lane of traffic. The court affirmed a directed verdict in favor of plaintiff.

> [T]here was testimony that the pickup truck driver waved Bright on. But Bright cannot attribute the accident solely to him. The situation that confronted Bright "is one that occurs to motorists every day." *Van Jura v. Row*, 175 Ohio St. 41, 191 N.E.2d 536, 537 (1963). Someone wanting to make a left turn is not relieved of responsibility because another motorist signals that the coast is clear. Bright's "obligation, as he moved left across the path of other vehicles, was to keep a lookout for such traffic, and not depend upon the act of another." 175 Ohio St. at 45, 191 N.E.2d at 538. *See also Kemp v. Armstrong*, 40 Md.App. 542, 546, 392 A.2d 1161, 1164 (1978), *cert. denied*, 284 Md. 741 (1979) (One driver signaled another that the way was clear for a U–turn; it wasn't, and an accident ensued. Statutory duty "with respect to changing lanes can not be delegated to other drivers on the highway."); *Dawson v. Griffin*, 249 Kan. 115, 816 P.2d 374, 379 (1991) (Truck driver's hand signal unclear as to whether it was a guarantee of safety or a courteous gesture to indicate driver was yielding the right of way; nevertheless, the signaled driver "had a nondelegable duty to yield to oncoming traffic while making a left turn; and the only reasonable and safe thing to assume from a hand wave is, 'I won't hit you.'"); *Government Emp. Ins. Co. v. Thompson*, 351 So.2d 809, 810 (La.App. 1977) ("Mr. Decuir's signal was intended to give Mr. Thomas permission to pass in front of Mr. Decuir's stopped truck. Mr. Thomas cannot be relieved thereby of his obligation to keep a proper lookout for oncoming traffic in other lanes of traffic. His misinterpretation of Mr. Decuir's courteous gesture cannot serve to render Mr. Decuir guilty of negligence proximately causing the ensuing accident.").

327 Md. at 402–403, 609 A.2d at 1185 (footnote omitted).

As the quotation from *Myers* indicates, some courts have also applied an additional rationale: that the signal is intended as a courteous concession of the right-of-way, not as a message that it is safe to accept the concession. In any event, no matter what the signaller intended to tell defendant here, he cannot avoid his statutory obligation by merely relying on that signal. Therefore, to the extent the signal given by the Mercedes driver was the basis of the jury's verdict, it cannot stand.

**2. Due Care Defense**

The Ohio court in *Van Jura* also noted that the defendant there relied completely on the signal of the truck driver and undertook the left turn without even looking for oncoming traffic. 175 Ohio St. at 43–45, 191 N.E.2d at 538. Defendant here attempts to distinguish *Van Jura* by pointing to his testimony that he maintained a vigilant watch as he made his turn. Thus, he argues, he exercised due care and therefore cannot be held liable for the accident. We, however, disagree.

A.R.S. section 28–772 does not allow a due care defense. It requires that the left-turning driver yield to traffic approaching from the opposite direction when such traffic is either in the intersection or so close to it as to pose an immediate hazard. The statute does not merely direct that the left-turning driver exercise due care in looking for oncoming traffic, as does the Ohio statute mentioned in *Van Jura*. It is, instead, a "negligence per se" statute: the left-turning driver must yield to the oncoming traffic, regardless whether he diligently looks for such traffic.

In any event, even if the applicable statute were one imposing a duty of due care in making the turn, the result would be the same. Defendant admitted that the Pathfinder and the pickup truck blocked his view of Lane E (which is why he "relied" on the Mercedes driver's wave). Thus, no matter how vigilantly defendant scanned everything within his range of vision before making the turn, it was impossible for him to determine whether his path was clear. In other words, he admitted making a blind turn across traffic. No reasonable jury could have concluded that he exercised "due care" initiating such a turn when he was unable to rule out oncoming traffic.

In similar situations, courts have held that an unsighted driver cannot proceed while exercising due care. *See Coe v. Hough,* 42 Ariz. 293, 303–04, 25 P.2d 547, 550 (1933) ("If an autoist cannot see where he is going he should stop. If his vision is limited he should have such control of his car as to be able to stop within the radius of his vision. If he violates these reasonable and sane rules and runs into someone who is at the time exercising reasonable care, he is, we think, guilty of legal negligence."); *Myers,* 327 Md. at 395, 609 A.2d at 1185 ("turning blindly into oncoming traffic is negligent regardless of what that traffic is doing.")

We therefore hold that the only reasonable conclusion the jury could have reached was that defendant was negligent in making his turn and that his negligence was a proximate cause of plaintiff's injuries. Accordingly, the verdict was required to have ascribed at least some fault to defendant. Since it did not, it was contrary to the weight of the evidence and the motion for new trial should have been granted.

## II. POSSIBLE FAULT OF THE MERCEDES DRIVER

 Plaintiff also argues that the trial court should have granted her motion in limine to exclude the evidence of the actions of the Mercedes driver. She reasons that the Mercedes driver owed her no legal duty and therefore could not qualify as a nonparty at fault under A.R.S. section 12–2506(F)(2). She argues that:

> The Mercedes driver was not turning across Plaintiff's lane of traffic. The Mercedes driver was not obligated to conform to A.R.S. § 28–772 *vis a vis* Plaintiff. The Mercedes did not have to yield the right of way to Plaintiff. The Mercedes driver had no legal duty to Plaintiff. The Mercedes driver could not be at fault without the existence of the legal duty to Plaintiff.

Plaintiff therefore concludes that the signal from the Mercedes driver could have no legal consequence with regard to her.

This question has also been considered by a number of courts, but with divergent results. The Pennsylvania Superior Court summarized the diverging opinions:

> There are two major views in the United States relating to the liability of a signaling motorist. The first holds that the signal cannot reasonably be interpreted as anything other than a yield of the right of way or a gesture of courtesy, and without more the signaling motorist is not liable as a matter of law. *Shank v. Government Employees Ins. Co.,* 390 So.2d 903 (La. 1981); *Dix v. Spampinato,* 278 Md. 34, 358 A.2d 237 (1976); *Van Jura v. Row,* 175 Ohio St. 41, 191 N.E.2d 536 (1963); *Devine v. Cook,* 3 Utah 2d 134, 279 P.2d 1073 (1955); *Nolde Bros., Inc. v. Wray,* 221 Va. 25, 266 S.E.2d 882 (1980).
>
> The second view holds that it is for a jury to determine the significance reasonably attributable to a motorist's hand signal. *Cunningham v. National Service Industries,* 174 Ga.App. 832, 331 S.E.2d 899 (1985); *Sweet v. Ringwelski,* 362 Mich. 138, 106 N.W.2d 742 (1961); *Thelen v. Spilman,* 251 Minn. 89, 86 N.W.2d 700 (1957); *Miller v. Watkins,* 355 S.W.2d 1 (Mo.1962); *Riley v. Board of Education,* 15 A.D.2d 303, 223 N.Y.S.2d 389 (1962); *Armstead v. Holbert,* 146 W.Va. 582, 122 S.E.2d 43 (1961).

*Askew v. Zeller,* 361 Pa.Super. 35, 521 A.2d 459, 462 (1987). Plaintiff asks that we adopt the first view described in *Askew,* and hold, as a matter of law, that a motorist's signal to another be interpreted as nothing more than a ceding of the right-of-way and a promise that "I won't hit you." In other words, the signalling motorist would owe no "duty of care to ascertain safe passage." *Duval v. Mears,* 77 Ohio App.3d 270, 602 N.E.2d 265, 267 (1991). *Accord, Van Jura,* 175 Ohio St. at 43–45, 191 N.E.2d at 538.

We, however, prefer the reasoning set forth by Division Two of this court in *Phillips v. Capps,* 155 Ariz. 597, 748 P.2d 1221 (App.1988). There, defendant Marquez was stopped westbound on Clarendon at a stop sign at 35th Avenue, waiting to turn south. Northbound traffic on 35th Avenue was backed up from a traffic light north of Clarendon. Capps was driving a northbound truck and, because of the backup, stopped in

the center of three northbound lanes, leaving room for Marquez to enter 35th Avenue. Capps motioned Marquez to make her turn. Because of the size of Capps' truck, Marquez could not see traffic beyond the truck to the south. As she crossed in front of Capps, she collided with Phillips' northbound motorcycle, which was in the interior lane of 35th. Phillips sued Marquez, Capps, and Capps' employer. The trial court granted summary judgment in favor of Capps and his employer on the grounds that, as a matter of law, Capps was neither negligent nor the cause of Phillips' injury.

Division Two, though, held that although he had no "duty" to act, when Capps did act he was required to do so carefully. The court concluded that there was a question of fact:

> The jury could reasonably infer that Marquez would believe that the signal meant that it was safe to make the turn. Even if she did not, the jury could find Capps negligent in inviting Marquez into a situation of peril which he could recognize but she could not. We do not believe this result is changed by the testimony of Marquez that she still felt obligated to keep a lookout for other traffic. Capps' negligence in part related to inviting Marquez onto the road in circumstances where he should have known that she would be unable to see approaching traffic. In these circumstances, it cannot be said as a matter of law that the failure of Marquez to see Phillips was the sole legal cause of the accident.

155 Ariz. at 598, 748 P.2d at 1222 (citations omitted).

Applying that logic here, we hold that the jury may reasonably find both defendant and the signaller to be liable for the resulting accident.

## III. COMPARATIVE NEGLIGENCE OF PLAINTIFF

As part of her argument that the court should have granted her motion for new trial, plaintiff asserts that there was no evidence from which the jury could have concluded that she was guilty of any contributory negligence. We disagree.

As she proceeded north, plaintiff saw the cars stopped in the other through lane, but did not know what was impeding the other northbound traffic. The cause might have been, for example, a pedestrian crossing the street or, as here, a car turning. From these facts, a jury could reasonably hold plaintiff negligent for proceeding through the intersection at 35 miles per hour.[4] *See Sweet v. Ringwelski*, 362 Mich. 138, 106 N.W.2d 742, 747–48 (1961) (standard of care imposed by statute and common law required defendant driver to anticipate presence of pedestrian in crosswalk, who was waved to cross in front of truck stopped at intersection in same direction of travel as defendant).

In *Evans v. Pickett*, 102 Ariz. 393, 398, 430 P.2d 413, 418 (1967), the supreme court applied the then-current version of A.R.S. section 28–701 in similar circumstances. There, plaintiff was driving below the posted speed limit westbound on Indian School Road approaching its intersection with 48th Street. Due to the presence of a truck, he could not see the defendant, who was preparing to turn from 48th Street onto Indian School. Defendant's view of the plaintiff's vehicle was also impeded by the truck. The court held that the issue of the plaintiffs' contributory negligence was properly presented to the jury:

> Plaintiffs contend that they were traveling "at a lawful rate of speed," and that

---

4. A.R.S. section 28–701 provides, in pertinent part:

A. A person shall not drive a vehicle on a highway at a speed greater than is reasonable and prudent *under the circumstances, conditions and actual and potential hazards then existing.* In every event, speed shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on, entering or adjacent to the highway in compliance with legal require-

ments and the duty of all persons to exercise reasonable care for the protection of others.

. . . . .

D. The ... speed ... shall be reduced to that which is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, such as when:

1. Approaching and crossing an intersection ...

(Emphasis added.)

plaintiff Evans "was maintaining a proper lookout," and therefore the above instruction does not apply. But this contention assumes freedom from negligence, which was the actual question before the jury. Evans' testimony showed that he did not see defendant's car when he had passed the parked truck which obscured his view, and that he might not have seen the car until he was right at the intersection. This would indicate a failure to keep a proper lookout under the circumstances or operate at a reduced speed because of special hazards.

*Evans,* 102 Ariz. at 398, 430 P.2d at 418. Similarly, under the circumstances here, the jury might reasonably find plaintiff to be negligent.[5]

### Conclusion

Under the undisputed facts, defendant was guilty of some negligence, and that negligence was a proximate cause of plaintiff's injuries. The jury should have therefore allocated at least some fault to defendant. Accordingly, this case must be retried. On retrial, the court must be guided by the following: defendant cannot avoid responsibility for complying with A.R.S. section 28–772 by relying upon the signal from the driver of the Mercedes; the jury may allocate some liability to the driver of the Mercedes; and finally, the jury may find plaintiff contributorily negligent. The trial court's order denying plaintiff's motion for new trial is reversed and this matter is remanded for proceedings consistent with this decision.

FIDEL, P.J., and McGREGOR, J., concur.

---

5. Although plaintiff ascribes error in the court's giving several jury instructions which she opposed and in declining to give several jury instructions she proposed, we need not examine the alleged error. Our discussion of the legal principles will provide the trial court with sufficient guidance to make necessary rulings on retrial.