31 P.3d 806

Lori A. OGDEN, a single person; Peggy Ann Klatt, individually, as Personal Representative of the Estate of Dean F. Zeller, and for the benefit of Tasha Ann Zeller, a minor, and A. Thomas Cole, as Personal Representative of the Estate of William Zeller, Plaintiffs–Appellees,

v.

J.M. STEEL ERECTING, INC., an Arizona corporation; Jay V. Soyko and Mary B. Soyko, his wife, Defendants–Appellants.

No. 1 CA–CV 00–0260.

Court of Appeals of Arizona, Division 1, Department D.

May 31, 2001.

Review Denied Jan. 8, 2002.

Law Offices of A. Thomas Cole by A. Thomas Cole, Casa Grande, Attorneys for Plaintiffs–Appellees.

Jones, Skelton & Hochuli by Mark D. Zukowski, and David C. Lewis, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

GARBARINO, Judge.

¶ 1 The pivotal issue is whether the defendants are entitled to a new trial because the jury failed to allocate some degree of fault to a non-party, even though the parties stipulated that the non-party proximately caused the relevant injuries. Here, the jury disregarded the stipulation and apportioned 100% of fault to the party defendants. We hold that a jury must allocate some degree of fault to a stipulated non-party at fault. Accordingly, we remand for a new trial.

¶ 2 We must also decide if we should vacate the jury's verdict in its entirety and remand for a trial on all issues of liability and damages, or affirm the jury's verdict as to liability and damages and remand for a trial only on the allocation of fault as between the party defendants and the designated non-party at fault. After reviewing the record, we conclude that the jury's verdict must be vacated in its entirety and the matter remanded for a trial on all issues of liability and damages.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 In the early morning hours of November 3, 1990, in Phoenix, a pickup truck driven by Joseph Lichman collided with a motorcycle driven by Dean F. Zeller, with Lori A. Ogden seated behind him. Lichman, who had been drinking at a local bar, was turning left onto Campbell Avenue after proceeding southbound on 35th Avenue. Mr. Zeller died and Ms. Ogden suffered serious injuries.

¶ 4 The parties stipulated in their joint pretrial statement that "Lichman was intoxicated at the time of the accident, and his intoxication was a proximate cause of the accident." Lichman pled guilty to criminal charges in connection with Mr. Zeller's death and served time in prison.

¶ 5 Ms. Ogden and Mr. Zeller's relatives brought a personal injury action against Lichman's employer, J.M. Steel Erecting, Inc., and its owners, Jay Soyko (Soyko) and his spouse, Mary Soyko (collectively Steel). The suit also named Lichman as a defendant, but the trial court later severed Lichman from the case and redesignated him as a non-party at fault.

¶ 6 The parties agreed that Lichman was not acting in the course and scope of his employment at the time of the accident. Instead, the plaintiffs argued that Steel owned the truck and had negligently entrusted it to Lichman. The evidence at trial therefore focused on paperwork surrounding an alleged "sale" of the truck from Steel to Lichman and Lichman's driving record.

¶ 7 Soyko testified that he was unaware of Lichman's poor driving record, including a March 1989 conviction for driving under the influence. He further testified that he was aware of one occasion when Lichman had to walk back to work after a police officer prohibited him from driving because Lichman's driver's license had been suspended. Lichman, however, told Soyko that he had not received a ticket for the stop and simply had to pay a reinstatement fee.

¶ 8 Over Steel's objection, former J.M. Steel general manager Roger Morgan testified that Soyko was aware of Lichman's driving record. In fact, Morgan testified that J.M. Steel kept the title and insurance on the truck because it knew that Lichman would not qualify for insurance in light of his bad driving record. Morgan would pay the monthly insurance premiums on the truck during the time when it was being driven personally by Lichman, even though Morgan

repeatedly complained to Soyko about the arrangement.

¶ 9 The jury returned a verdict in favor of the plaintiffs and against Steel. The verdict allocated 100% of the fault to Steel and no fault to Lichman. Ms. Ogden received $1,416,437 in damages, and Mr. Zeller's relatives collectively received $1,300,000. The trial court subsequently entered judgment not only for these compensatory damages, but also for pre-judgment interest accruing on certain portions of the judgment.

¶ 10 Steel then filed unsuccessful motions for a new trial pursuant to Rule 59(a) of the Arizona Rules of Civil Procedure, for judgment as a matter of law [1] because of the 0% allocation of fault to Lichman, and to amend the judgment. This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–2101(B) and (F) (1994).

## DISCUSSION

I. *Steel's Motion for Judgment as a Matter of Law*

■ ¶ 11 We first address Steel's motion for judgment as a matter of law following the verdict because, if Steel prevails on this issue of the appeal, the remaining issues are moot. *See, e.g., Pointe Resorts, Inc. v. Culbertson,* 158 Ariz. 137, 140–41, 761 P.2d 1041, 1044–45 (1988) ("Generally the mootness doctrine requires that judicial opinions not be rendered concerning issues which no longer exist because of changes in the factual circumstances.").

¶ 12 Steel argues that it is entitled to judgment as a matter of law following the jury's verdict allocating 100% of fault for the plaintiffs' damages to Steel and 0% to Lichman, a designated non-party at fault. Steel

bases its argument on the proposition that a defendant-entrustor cannot be held liable in tort for negligent entrustment if the underlying theory of negligence, that is, the negligence of an entrustee, fails. *See Quintero v. Cont'l Rent–A–Car Sys., Inc.,* 9 Ariz.App. 488, 491, 453 P.2d 999, 1002 (1969) ("Tort liability arising out of negligent entrustment involves the concurrent acts of negligence of the person entrusting the automobile and of the person to whom the automobile was entrusted." (citing *Hardwick v. Bublitz,* 254 Iowa 1253, 119 N.W.2d 886 (1963))), *vacated on other grounds,* 105 Ariz. 135, 460 P.2d 189 (1969). Steel contends that the jury's allocation of 0% fault to Lichman destroys the plaintiffs' overarching theory of liability— that is, negligent entrustment—because an entrustor cannot be negligent if the entrustee is not negligent in the first instance.[2] *See, e.g., Mulhern v. City of Scottsdale,* 165 Ariz. 395, 398, 799 P.2d 15, 18 (App.1990) ("In order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort."); *Behrens v. Aetna Life & Cas.,* 153 Ariz. 301, 302, 736 P.2d 385, 386 (App.1987) (declaring, in the context of a homeowners' insurance policy exclusion, that "[a] claim for negligent entrustment, or for that matter negligent supervision, cannot exist apart from the excluded negligent operation of the [instrumentality of the injury]").

¶ 13 Steel would be entitled to judgment as a matter of law if the jury had the question of whether Lichman was liable before it and then found Lichman not liable by returning a 0% allocation of fault to him. Here, however, the jury did not have to determine whether Lichman was negligent because the parties stipulated to his negligence. Rather, the questions before the jury were whether Steel negligently entrusted the vehicle to Lichman,

1. Steel filed a motion for judgment notwithstanding the verdict; however, such motions are now termed motions for judgment as a matter of law. *Murcott v. Best W. Int'l, Inc.,* 198 Ariz. 349, 352, ¶ 2, 9 P.3d 1088, 1091 (App.2000).

2. Relying on *Cooter v. State Farm Fire & Casualty Co.,* 344 So.2d 496, 499 (Ala.1977), this Court in *Lumbermens Mutual Casualty Co. v. Kosies,* 124 Ariz. 136, 602 P.2d 517 (App.1979), decided that a plaintiff must prove the underlying negligence of the entrustee before being able to recover

against the entrustor. *Id.* at 138, 602 P.2d at 519. The *Lumbermens* court added in a footnote that "there can be a situation in which there is negligent entrustment but no negligence on the part of the driver." *Id.* at 138 n. 1, 602 P.2d at 519 n. 1. The *Lumbermens* court was presumably making the point that an *intentional* tort, committed by an entrustee, could also qualify as a predicate for a negligent entrustment claim against an entrustor.

and, if so, the extent of both Lichman's and Steel's respective liability. The *stipulation*, not the 0% allocation in the verdict, was conclusive as to Lichman's negligence.

¶ 14 The jury was effectively prohibited from concluding that Lichman was not negligent, and thus could not on that basis have exonerated Steel from liability. The jury failed to allocate fault to a non-party whose liability had been stipulated to by the parties. *See infra* Part II. Steel is not entitled to judgment as a matter of law.

## II. *Steel's Motion for New Trial for Improper Fault Allocation*

¶ 15 A motion for a new trial on the ground that the verdict is against the weight of the evidence is within the sound discretion of the trial court. We will reverse the trial court's denial of such a motion only if it reflects a manifest abuse of discretion. *Blakely Oil, Inc. v. Wells Truckways, Ltd.*, 83 Ariz. 274, 278, 320 P.2d 464, 466 (1958). If any substantial evidence could lead reasonable persons to find the ultimate facts to support a verdict, the judgment must be affirmed. *Curlee v. Morris*, 72 Ariz. 125, 127, 231 P.2d 752, 753 (1951). Nevertheless, "it is not only our right, but our duty, to set aside a verdict" if no evidence in the record justifies it. *Spain v. Griffith*, 42 Ariz. 304, 305, 25 P.2d 551, 551 (1933).

¶ 16 We find no evidence to justify the jury's conclusion that Steel was wholly at fault but Lichman was not at all at fault. It was undisputed that Lichman's blood alcohol level was 0.15 percent at the time of the accident; that he pled guilty to criminal charges arising out of the accident; and that he was not acting in the course and scope of his employment with Steel. The parties' stipulation that Lichman's negligence was a proximate cause of the plaintiffs' harm was admitted into evidence. Accordingly, Arizona law required the jury to assign some percentage of fault to Lichman. *See* A.R.S. § 12–2506(B) (Supp.2000) ("In assessing percentages of fault the trier of fact shall consider the fault of *all persons who contributed to the alleged injury* .... " (emphasis added)).

¶ 17 We also base this conclusion on this Court's holding in *Styles v. Ceranski*, 185 Ariz. 448, 916 P.2d 1164 (App.1996). The plaintiffs' lawyer in *Styles* asked the jury to assign all fault to the plaintiffs' family doctor and none to the surgeon who actually performed an unnecessary surgery. *Id.* at 449–50, 916 P.2d at 1165–66. The lawyer also argued in closing that the jury should exercise its discretion not to assign fault to non-parties because 'it would subtract from the plaintiffs' verdict. *Id.* at 451, 916 P.2d at 1167. As in this case, the jury in *Styles* complied and the trial court incorrectly reasoned that the jury was free to disregard a non-party's fault. *Id.* Like the *Styles* court, we conclude that the trial court committed manifest error. *Id.* In fact, the parties' stipulation as to Lichman's negligence makes this case an even stronger candidate for a new trial.

¶ 18 We are not persuaded by the trial court's attempt to distinguish *Styles*. The trial court stated that the family doctor in *Styles* "clearly had nothing to do with causing the injury, whereas in this case, but for the egregious acts of the Defendants, the Plaintiffs would not have been injured by Lichman." The trial court's rationale ignores the fact that the family doctor was, at least to some extent, liable. More importantly, the trial court's rationale misconstrues the nature of but/for causation. Proving negligence and causation is only the first step; the jury must still assess some fault against non-parties whose fault is undisputed. *See Natseway v. City of Tempe*, 184 Ariz. 374, 376–78, 909 P.2d 441, 443–45 (App.1995) (holding that Tempe was entitled to compare its fault for an accident with that of a suspect and another city and explaining that "[d]espite Tempe's duty to prevent [the suspect] from causing the harm, we believe that to place the entire responsibility for the accident on Tempe would be inconsistent with the principles of comparative fault").

¶ 19 Contrary to the trial court's belief, the Arizona Supreme Court's subsequent decision in *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 961 P.2d 449 (1998) (*Hutcherson II* ) does not vitiate the holding in *Styles*. The supreme court simply held that an appellate

court may not substitute its judgment for that of the jury by vacating a fault allocation of 75% to a city and 25% to a murderer. *Id.* at 55–56, ¶¶ 24–27, 961 P.2d at 453–54. Nothing in *Hutcherson II* remotely suggests that a jury is entitled to completely disregard the fault of a non-party. Steel's motion for a new trial should have been granted.[3]

¶ 20 The plaintiffs nevertheless contend that we can sustain the jury's verdict under a concerted action theory. They failed, however, to request a concerted action instruction at trial. Consequently, the plaintiffs cannot now rely upon an unsubmitted theory to explain the jury's verdict. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 39, 945 P.2d 317, 350 (App.1997) (recognizing that, although the reviewing court must search for "a reasonable way to read the verdicts as expressing a coherent view of the case ... before it is free to disregard the jury's verdicts and remand" for a new trial, the court could not find a reasonable way to affirm the one claim properly submitted to the jury).

III. *The Trial on Remand*

¶ 21 Although Steel is entitled to a new trial because the jury failed to allocate some fault to Lichman, the next issue we must address is whether we may affirm the verdicts as to liability and damages and remand only on the issue of fault allocation between Steel and Lichman. Steel seeks a new trial as to all issues of liability and damages. The plaintiffs, during oral argument, indicated that they would prefer a remand only as to fault allocation if we were to decide Steel was entitled to a new trial.

¶ 22 Both the *Styles* decision and this Court's decision in *Hutcherson v. City of Phoenix*, 188 Ariz. 183, 933 P.2d 1251 (App. 1996) (*Hutcherson I*), *vacated*, 192 Ariz. 51, 961 P.2d 449 (1998), addressed the issue of remanding for a trial on fault allocation alone. In *Styles*, this Court determined that a "retrial should be granted on both liability and damages 'when the issues are interwoven and cannot be separated without injustice to the opposing party.'" 185 Ariz. at 451–52, 916

P.2d at 1167–68 (quoting *Anderson v. Muñiz*, 21 Ariz.App. 25, 28, 515 P.2d 52, 55 (1973)). This Court found that, although the trial court had limited each party to only one standard of care witness, the plaintiffs had nonetheless introduced the testimony of three additional witnesses regarding the standard of care under the guise of damages witnesses. *Id.* at 452, 916 P.2d at 1168. We recognized that the testimony of the three damages witnesses "reflected the intertwining of [liability and damages] and probably affected the verdict." *Id.* at 453, 916 P.2d at 1169. This Court therefore remanded for a new trial on all issues. *Id.* at 454, 916 P.2d at 1170.

¶ 23 In this Court's decision in *Hutcherson I*, we faced the same issue. There, the jury's verdicts as to liability and damages were affirmed and the matter was remanded for a new trial only as to allocation of fault because "the liability and damage verdicts were justified by the evidence and were neither inextricably entwined with nor tainted by the unjustified apportionment of fault." 188 Ariz. at 197, 933 P.2d at 1265. *Hutcherson I* was ultimately vacated by the Arizona Supreme Court in *Hutcherson II*, 192 Ariz. at 57, ¶ 37, 961 P.2d at 455, but not because of the remand solely on the allocation of fault issue. Rather, in the supreme court's view, the court of appeals' determination that the jury's allocation of fault between the two tortfeasors was "unjustified by the evidence and that the trial court abused its discretion in denying the City's motion for new trial," *Hutcherson I*, 188 Ariz. at 194, 933 P.2d at 1262, resulted in nothing more than "the court of appeals' majority improperly substitut[ing] 'its view of the evidence for that of the jury and of the trial court.'" *Hutcherson II*, 192 Ariz. at 56, ¶ 27, 961 P.2d at 454 (quoting *Hutcherson I*, 188 Ariz. at 197, 933 P.2d at 1265 (Grant, J., dissenting)).

¶ 24 Based on *Styles* and *Hutcherson I*, we believe that, if the issues of liability and damages are not inextricably intertwined with the allocation of fault among tortfeasors, and if reversible error occurred only in the

---

3. Our determination that Steel is entitled to a new trial obviates the need to reach Steel's argu-

ment concerning the award of pre-judgment interest on the underlying judgment.

jury's allocation of fault, then we can affirm liability and damages verdicts and remand for a trial only on the allocation of fault. If we assume that the trial in this case was otherwise error free, a permissible remedy would be to remand for a trial only on the allocation of fault because the record reveals that the evidence justified the jury's verdicts as to Steel's liability and the plaintiffs' damages, and that "neither [issue is] inextricably entwined with nor tainted by the unjustified apportionment of fault." *Hutcherson I,* 188 Ariz. at 197, 933 P.2d at 1265; *cf. Styles,* 185 Ariz. at 453, 916 P.2d at 1169 (concluding that "exploitation of the trial court's error in allowing ... [three additional] witnesses to testify as both damages and liability experts reflected the intertwining of [liability and damages]," and "[t]he proper remedy is a new trial on all liability and damages issues").

¶ 25 Steel, however, assigns error to other occurrences during the trial itself that may require a new trial on all issues. *See, e.g., Styles,* 185 Ariz. at 452–53, 916 P.2d at 1168–69 (distinguishing *Hierta v. Gen. Motors Corp.,* 148 Mich.App. 796, 385 N.W.2d 690 (1986), which held that "[s]ince the parties received an error-free trial on the issues of liability and damages, we need only remand on the issue of comparative negligence." That trial, like the trial in *Styles,* "was not so error-free" and a trial on all liability and damages issues was required).[4]

### A. Hedonic Damages

■ ¶ 26 Steel claims that the trial court's instruction to the jury regarding so-called "hedonic damages"—damages to the plaintiff for the loss of enjoyment of life's activities— was error because it allowed the jury to award the plaintiffs double recovery for pain and suffering. *We disagree and conclude that hedonic damages can be a component of a general damages claim, distinguishable from, and not duplicative of, damages for pain and suffering.*

¶ 27 The trial court instructed the jury on the issue of damages as follows:

If you find defendants liable to plaintiff Lori Ogden you must then decide the full amount of money that will reasonably and fairly compensate each plaintiff for each of the following elements of damages proved by the evidence to have resulted from the fault of any party or person:

(1) The nature, extent, and duration of the injury.

(2) The pain, discomfort, suffering, disability, disfigurement, and anxiety already experienced, and reasonably probable to be experienced in the future as a result of the injury.

(3) Reasonable expenses of necessary medical care, treatment, and services rendered, and reasonably probable to be incurred in the future.

(4) Lost earnings to date, and any decrease in earning power or capacity in the future.

(5) *Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury.*

(Emphasis added.)

¶ 28 No published Arizona case has directly addressed whether hedonic damages are distinguishable from, or duplicative of, damages for pain and suffering. In *Sheppard v. Crow–Barker–Paul No. 1 Ltd. Partnership,* 192 Ariz. 539, 968 P.2d 612 (App.1998), however, this Court tacitly addressed the question. In *Sheppard,* a case brought by an injured minor's father and "next best friend," the injured minor was apparently an accomplished and talented basketball player with aspirations of playing professional basketball. *Id.* at 548, ¶ 49, 968 P.2d at 621. The defendant argued that the trial court erred when it allowed the plaintiff to introduce evidence regarding the minor's diminished basketball

---

4. The Michigan Supreme Court remanded *Hierta* back to the Michigan Court of Appeals for reconsideration in light of recent developments in Michigan law. *Hierta v. Gen. Motors Corp.,* 429 Mich. 887, 416 N.W.2d 313 (1987). Based on those developments, the Michigan Court of Appeals ultimately reversed its decision to order a new trial only on the issue of comparative negligence and, instead, affirmed the jury's original verdict. *Hierta v. Gen. Motors Corp.,* 196 Mich. App. 20, 492 N.W.2d 738, 739 (1992).

skills due to the injuries he sustained. *Id.* at 548, ¶¶ 48–50, 968 P.2d at 621.

¶ 29 The plaintiff countered that he was not seeking to introduce evidence to support a special damages verdict for the loss of the chance for the minor to play professional basketball. Rather, the plaintiff was offering the evidence as part of the plaintiff's general damages claim for the loss of the ability to play the game at the same level as before the accident and the attendant effect this had on the minor. *Id.* at 548, ¶ 50, 968 P.2d at 621. The trial court instructed the jury that the minor "is not claiming that he is entitled to a lost NBA salary based on a lost chance to play in the NBA.... [The minor] is claiming damages for *loss of enjoyment of an activity,* basketball, and the *diminution in his ability* to play basketball." *Id.* at 548–49, ¶ 51, 968 P.2d at 621–22 (emphasis added).

¶ 30 This Court recognized that the plaintiff, while presenting and arguing the evidence, "confined himself to a general damage claim for loss of enjoyment, not a special damage claim for loss of a chance," and held that "the trial court appropriately handled this issue, both in evidentiary rulings and instructions." *Id.* at 549, ¶ 52, 968 P.2d at 622. We see no reason to preclude plaintiffs from introducing this type of evidence, nor to preclude the trial courts from instructing juries on hedonic damages.

¶ 31 Moreover, we find the South Carolina Supreme Court's decision in *Boan v. Blackwell,* 343 S.C. 498, 541 S.E.2d 242 (2001), and the distinction drawn between general pain and suffering damages and hedonic damages to be persuasive:

An award for pain and suffering compensates the injured person for the physical discomfort and the emotional response to the sensation of pain caused by the injury itself....

On the other hand, damages for "loss of enjoyment of life" compensate for the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations. For example, an award for the di-

minishment of pleasure resulting from the loss of use of one of the senses, or for a paraplegic's loss of the ability to participate in certain physical activities, falls under the rubric of hedonic damages. In our view, "loss of enjoyment of life" damages compensate the individual not only for the subjective knowledge that one can no longer enjoy all of life's pursuits, but also for the objective loss of the ability to engage in these activities.

... [A] separate charge on hedonic damages will minimize the risk that a jury will under- or over-compensate an injured person for her noneconomic losses. While there are cases in which it is difficult to segregate the various components of these types of damages, we conclude that a separate charge will clarify for the jurors the issues they should consider in awarding money for injuries which are not readily reducible to specific amounts.

*Id.* at 244–45 (citations and footnote omitted). We conclude that the trial court did not err by instructing the jury on hedonic damages.

### B. Hearsay Evidence

¶ 32 Steel next argues that the trial court improperly admitted the contents of a police report authored by an officer investigating the accident, including a supplement by a different officer, Officer Yost, summarizing Lichman's alleged driving record and possible disposition of moving violations. Admission of this exhibit allowed the plaintiffs to create a summary document containing both Officer Yost's report of Lichman's purported driving record and the certified motor vehicle division (MVD) official report. The plaintiffs claim that Steel stipulated to the report's admission. We find no merit in the plaintiffs' assertion that a stipulation existed. To the contrary, the record reveals that Steel vigorously objected to the document's admission.

¶ 33 Steel essentially argued that the report's supplement could not be authenticated, that it was inadmissible hearsay, and that its admission would be unfairly prejudicial. After hearing the argument of counsel, the trial court summarily concluded, "I find sufficient reliability and trustworthiness, so the objec-

tion is overruled. That won't be redacted from the report."

¶ 34 "Evidentiary rulings are subject to the trial court's determination and will not be disturbed, absent an abuse of discretion." *State v. Jones*, 197 Ariz. 290, 308, ¶ 47, 4 P.3d 345, 363 (2000), *cert. denied*, 532 U.S. 978, 121 S.Ct. 1616, 149 L.Ed.2d 480 (2001). Here, for two reasons we find that the trial court abused its discretion by admitting the supplement. The document was not authenticated as required by Rule 901(a) of the Arizona Rules of Evidence. Because the plaintiffs were offering Officer Yost's supplement to the police report to demonstrate Lichman's driving record, it was incumbent upon the plaintiffs to proffer evidence authenticating the document, considering the fact that the officer's supplement contained different information from Lichman's certified, self-authenticating, and stipulated MVD record. *See, e.g.*, Ariz. R. Evid. 902(4) (providing that certified public documents are self-authenticating). There was no evidence "to support a finding that the matter in question [was] what its proponent claim[ed]," Ariz. R. Evid. 901(a), that is, that the supplement accurately reflected Lichman's driving record, or, at the most basic level, that it was Officer Yost's report.

¶ 35 Moreover, unlike Lichman's certified driving record, the supplement was not self-authenticating under Rule 902(4) because the supplement was not a certified public document. Our review of the record indicates that the supplement at issue was part of a larger, uncertified police report. Because it was not self-authenticating, the supplement should not have been admitted.

¶ 36 In addition to the lack of proper authentication, the supplement was hearsay under Article 8 of the Arizona Rules of Evidence. *See* Ariz. R. Evid. 801(a)-(c). Hearsay is not admissible at trial unless it meets one of the exceptions to the hearsay rule.

Ariz. R. Evid. 802, 803, 804. Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted in the statement. Ariz. R. Evid. 801(c). Here, the plaintiffs were offering Officer Yost's handwritten supplement to prove Lichman's driving record. Counsel for the plaintiffs stated that he wanted the supplement in evidence "because I am trying to show the entirety of [Lichman's] record," and "trying to establish notice by *what the truth is of [Lichman's] driving history.*" (Emphasis added.) Thus, the plaintiffs were specifically offering the statement to prove the truth of the matter asserted, a prohibited hearsay purpose.

¶ 37 The trial court apparently determined the admissibility of the report pursuant to Rule 803(24) by stating that it believed in the "reliability" and "trustworthiness" of the supplement, and because the plaintiffs did not argue for the admissibility under any other recognized exception. Rule 803(24) allows for the admission of hearsay statements that are not specifically covered by any other exception if (1) the statement has the circumstantial guarantees of trustworthiness attendant with the other designated hearsay exceptions, (2) the statement pertains to a material fact, (3) the statement is more probative than any other evidence that could reasonably be offered, and (4) the purposes of the Rules of Evidence and the interests of justice are served by the admission of the statement.

¶ 38 We note that the supplement fails at the first inquiry; that the report does not present the requisite circumstantial guarantees of trustworthiness attendant with the other exceptions to the hearsay rule. The supplement was not authenticated. Indeed, aside from the fact that the report was purportedly authored by a police officer, there is no evidence from which the trial court could conclude that the supplement was in any way trustworthy.[5] The record itself actually

5. The plaintiffs also advance the argument that the supplement is admissible under the public records exception to the hearsay rule because the statements were "contained in the public record." This, too, fails because there is no evidence in the record from which the trial court could conclude that the observations regarding Lichman's driving history were made pursuant to a duty imposed by law upon Officer Yost. Ariz. R. Evid. 803(8)(B). Also, the report contains a second level of hearsay—Officer Yost's report of Lichman's driving record, which he got from another source. So even if the record might

casts doubt on the trustworthiness of the supplement because of the discrepancy with the admitted MVD record.

 ¶ 39 The trial court abused its discretion by admitting the unauthenticated hearsay statements of Officer Yost. The error is reversible, however, only if the trial· court's clear abuse of discretion prejudiced the complaining party. *Gasiorowski v. Hose*, 182 Ariz. 376, 382, 897 P.2d 678, 684 (App. 1994). Steel claims that it was substantially prejudiced by the admission of the supplemental report because it allowed the plaintiffs "to create a colorful, attention-grabbing 'Summary of Lichman's Driving Offenses Prior to Accident of 11/03/90' as Exhibit 12," and that it did not have the opportunity to cross-examine the author of the supplemental report. We agree.

¶ 40 A review of the record reveals that the plaintiffs' summary Exhibit 12, which is a combination of the offenses contained in the MVD record and Officer Yost's supplemental report, lists thirteen of Lichman's alleged prior offenses, only three of which were contained in the MVD report. Among the remaining ten offenses contained in Officer Yost's report was an additional DUI offense. Steel was substantially prejudiced by this information because, although Lichman's driving record was not conclusive as to Steel's liability, the evidence allowed the jury to infer that, because of the number of prior offenses, Steel should have known of Lichman's record and should never have entrusted its vehicle to him. Steel is entitled to a new trial on all issues on this basis.

### C. Undisclosed Anticipated Testimony of a Late Designated Witness

¶ 41 Steel's final argument is that the trial court should have precluded the plaintiffs' witness, Morgan, a former J.M. Steel manager, from testifying at trial because the plaintiffs 1) had engaged in *ex parte* contacts with him in violation of *Lang v. Superior Court*, 170 Ariz. 602, 826 P.2d 1228 (App.1992), 2) failed to provide a summary of Morgan's

anticipated testimony, and 3) only informed Steel that they would be calling Morgan as a witness the day before trial. Because we have concluded that Steel is entitled to a new trial as to liability and damages for other errors committed in the trial, we need not reach this issue.

### CONCLUSION

¶ 42 For the foregoing reasons, the jury's verdict is vacated, the judgment of the trial court is reversed, and this matter is remanded for a new trial on all issues of liability and damages.

CONCURRING: NOEL FIDEL, Presiding Judge, MARGARET H. DOWNIE, Judge Pro Tempore.*

---

meet 803(8)(B), it might still contain second level hearsay that might be excisable.

\* The Honorable Margaret H. Downie, a judge of the Maricopa County Superior Court, was autho-

rized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.