NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSHUA SANDERS, et al., *Plaintiffs/Appellants*,

*v.*

CLARA HARRIS, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0835
FILED 1-28-2021

Appeal from the Superior Court in Maricopa County
No. CV2016-054510
The Honorable Cynthia J. Bailey, Judge (Retired)

**AFFIRMED**

COUNSEL

Joshua Sanders, Cheryl Jackson, Phoenix
*Plaintiffs/Appellants*

Berk Law Group, P.C., Scottsdale
By Daphne J. Reaume
*Counsel for Defendants/Appellees Clara Harris, Personal Representative of the
Estate of Mark D. Harris and Clara Harris*

Manning & Kass Ellrod, Ramirez, Trester, LLP, Phoenix
By Robert B. Zelms, Samantha J. Kattau
*Counsel for Defendants/Appellees Jeffrey Jones and AZ Home Seekers, LLC*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Joshua Sanders and Cheryl Jackson, a married couple, appeal from the superior court's final judgments after a jury trial and the court's denial of their motion for new trial.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This case involves the sale of real property.  Mark Harris, who owned a house in Chandler, died in March 2015.  His mother, Clara Harris, who lived in California, became the personal representative of his estate.  Ms. Harris decided to sell the house, and Mark's friend Ric Patrick arranged for work to be done on it before it was listed.  Patrick also assisted Harris with hiring real estate agent Jeff Jones and Jones' company AZ Home Seekers, LLC (collectively "Jones") to list the property.

¶3        In April 2015, Jones visited the property to assess its marketability.  Jones advised Patrick that the property needed a good deal of work.  Patrick, on behalf of Harris and the Estate, hired general contractor Jon Passey to work on the property.  Passey brought in a roof contractor to make roof repairs and an exterminator to treat the house for termites.

¶4        Eventually, in March 2016, Jones listed the property for sale.  That same month Joshua Sanders offered to purchase the house.

¶5        Sanders hired an inspection company, BPG.  During the inspection period BPG performed a general inspection and found a number of problems with the house.  Sanders asked the Estate to make repairs before closing, including replacing windows and making repairs to the pool and fireplace.  Sanders also asked the Estate to make repairs to the garage to deal with water damage, including remediating possible mold in a wall between the garage and a bedroom.  The Estate declined to make repairs and agreed to Sanders' request for a $4,000 price reduction instead.  Sanders accepted the price reduction and signed an "as-is" addendum to the purchase contract.  The Estate accepted Sanders' offer to purchase the house for $290,000.  The sale of the property closed escrow in May 2016.  Sanders'

2

wife Jackson was not a party to the purchase contract, but several days after the close of escrow Sanders conveyed Jackson a community property interest in the house.

¶6          After taking possession of the property, Sanders and Jackson discovered problems they believed had not been disclosed. They hired a contractor, Arizona's Restoration Experts ("ARE"), to perform mold remediation services. They hired Westlife Environmental LLC ("Westlife") to inspect ARE's work. Westlife issued a "failed clearance" report indicating the air within the living room, dining room, and two bedrooms failed inspection. Westlife noted that ARE had failed to install proper critical barriers during abatement, "exposing the HVAC system to probable contamination." In July 2016 Sanders and Jackson obtained a bid from Sagebrush Restoration, LLC ("Sagebrush") to remove all remaining sheetrock, wall insulation, and attic insulation. Sagebrush commenced its work in November 2016—after Sanders filed his complaint.

¶7          In September 2016 Sanders filed a complaint in superior court against Clara Harris personally and the Estate ("collectively "Estate defendants"), Jones, and BPG. Sanders brought causes of action for breach of contract (counts 1 and 2 against the Estate and BPG), breach of the implied covenant of good faith and fair dealing (count 3 against the Estate), negligent misrepresentation/non-disclosure (count 4 against the Estate and against Harris personally), professional negligence/negligence per se (count 5 against Jones), and consumer fraud (count 6 against the Estate, Harris personally, and Jones). In November 2016 Sanders amended the complaint to add Jackson as a plaintiff and to add a cause of action for common law fraud against the Estate (count 7). In February 2017, the superior court granted a stipulation dismissing BPG after Sanders and Jackson settled with BPG.

¶8          In March 2017, the superior court dismissed Sanders' and Jackson's breach of contract and good faith and fair dealing claims as time barred. In addition, the court granted the Estate's motion to dismiss Jackson's remaining claims against the Estate (counts 4, 6, and 7) because Jackson was not a party to the real estate contract and related transactions. Harris, in her personal capacity, joined the Estate's motion to dismiss counts 4 and 6, arguing Jackson's claims against her should also be dismissed, but the court did not then address the issue and in May 2017 the court dismissed Jackson's claims against the Estate and awarded attorneys' fees against Jackson. The court dismissed Jackson's claims against Harris in her personal capacity in August 2018.

¶9        Sanders' claims for negligent misrepresentation/non-disclosure and consumer fraud against Jones, Harris personally, and the Estate (counts 4, 5, and 6),[1] and his claim for common law fraud against the Estate (count 7) proceeded to a jury trial. Because the superior court dismissed Jackson's claims against BPG, the Estate, and Harris personally before the trial, her only remaining claims to be tried were those against Jones. After a five-day jury trial, the jury entered a unanimous defense verdict.

¶10       Sanders and Jackson filed a motion for new trial pursuant to Arizona Rule of Civil Procedure ("Rule") 59, which the superior court denied. The superior court entered judgments against Sanders and Jackson, and they appealed. After the notice of appeal was filed, we stayed the appeal, noting it was premature because the superior court had entered two judgments resolving all claims against all parties, but that the judgment resolving Harris and the Estate's claims did not contain finality language. In February 2020, the court entered a signed judgment with a certification of finality pursuant to Rule 54(c) and we reinstated the appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (A)(5).

## DISCUSSION

I.    Adverse Inference Jury Instruction

¶11       Sanders and Jackson first argue the superior court abused its discretion by giving the jury an adverse inference jury instruction.

¶12       Before trial, Estate defendants filed a motion in limine to exclude Sanders' and Jackson's expert witnesses' "post-demolition opinions and damages calculations." Jones joined in the motion. Estate defendants argued that Sanders and Jackson willfully destroyed evidence critical to their defense by removing the remaining interior of the house (85% of the drywall along with attic and wall insulation) in November 2016, despite repeated requests from defense counsel to inspect the house before the work commenced. Estate defendants argued they were prejudiced by

---

[1]        Before the superior court gave its final instructions to the jury, the parties discussed whether the claim against Jones for professional negligence/negligence per se was the same as a claim for negligent misrepresentation, and the parties agreed that the court need not give a separate instruction on professional negligence/negligence per se.

Sanders' and Jackson's intentional spoliation of evidence "because Plaintiffs' removal of the drywall and insulation destroyed the very evidence that the defendants needed to defend themselves against Plaintiff's claim that the Estate concealed latent defects by painting, caulking and drywalling over them."

¶13 After oral argument on the motion in limine, the superior court denied it, finding that precluding Sanders' and Jackson's experts' reports and calculation of damages was an inappropriate sanction. The court noted, however, that an adverse inference jury instruction might be appropriate depending on the evidence at trial.

¶14 On the last day of trial, the superior court agreed to give the Estate defendants' and Jones' requested adverse inference instruction, noting that based on the evidence, the jury could find that Sanders and Jackson "acted improperly in taking down the drywall during the time when [the parties] were negotiating the inspections." In its final jury instructions, the court instructed the jury:

> A litigant has a duty to preserve evidence it knows or reasonably should know is relevant to a claim. Accordingly, the jury may draw an adverse inference from the destruction of evidence relevant to a case. Under this adverse inference, the jury may assume that the lost evidence, if available, would have been unfavorable to the responsible party. Testimony was presented at trial concerning the destruction of certain portions of Plaintiff's property. If you find the Plaintiffs knew or should have known that destroyed evidence was relevant to issues in this case, you may infer that the evidence would have been favorable to Defendants.

¶15 "In determining whether a jury instruction should be given, this court views the evidence in the light most favorable to the requesting party, and if there is evidence tending to establish the theory proposed in the instruction, it should be given." *Cotterhill v. Bafile*, 177 Ariz. 76, 79 (App. 1993). The superior court has substantial discretion in determining how to instruct the jury, and we review the court's decision to give a requested jury instruction for an abuse of discretion. *Smyser v. City of Peoria*, 215 Ariz. 428, 439, ¶ 33 (App. 2007); *S. Dev. Co. v. Pima Cap. Mgmt. Co.*, 201 Ariz. 10, 23, ¶ 41 (App. 2001). "We will not overturn a verdict unless we have substantial doubt about whether the jury was properly guided." *Smyser*, 215 Ariz. at 439, ¶ 33 (internal quotation omitted). Even if the superior court gives an erroneous instruction, we will not reverse unless the instruction

"prejudiced the appellant's substantial rights, and prejudice affirmatively appears in the record." *Id.* (internal quotation omitted).

**¶16**        The adverse inference jury instruction correctly stated the law and the evidence at trial supported giving the instruction. *See McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 260, ¶ 51 (App. 2013). Sanders and Jackson were aware that Estate defendants and Jones made multiple requests to inspect the property in October and November 2016, and that defense counsel had warned they had a duty to preserve evidence. They then signed the contract with Sagebrush to remove the remaining drywall and insulation and the work commenced on November 14, 2016, before Estate defendants and Jones could inspect the house. We find no abuse of discretion.

II.     Motion for New Trial

**¶17**        Sanders and Jackson next argue the superior court erred by denying their motion for a new trial because the jury verdicts were not supported by the evidence. They argue Jones admitted at trial that he had knowledge of material defects and failed to disclose them, and that the evidence at trial also showed Estate defendants and the Estate's agent Ric Patrick had knowledge of material defects they failed to disclose. We review the superior court's denial of a motion for a new trial for an abuse of discretion. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 581, ¶ 37 (App. 2015). "A motion for a new trial on the ground that [a jury's] verdict is against the weight of the evidence is within the sound discretion of the trial court," and "[w]e will reverse the trial court's denial of such a motion only if it reflects a manifest abuse of discretion." *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 36, ¶ 15 (App. 2001). We will affirm "[i]f any substantial evidence could lead reasonable persons to find the ultimate facts to support a verdict." *Id.* Under well-established rules, we must resolve every conflict in the evidence and draw every reasonable inference in favor of sustaining the jury's verdict. *St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312 (1987).

**¶18**        Sanders and Jackson alleged that Estate defendants and Jones made misrepresentations and omitted material facts in the sale of the property and "intended that Plaintiffs rely upon such concealment, suppression or omission, in connection with the sale," thereby violating the Consumer Fraud Act ("CFA"), A.R.S. §§ 44-1521 to -1534. Under the CFA, consumer fraud may be predicated on an "act" or "omission." *State ex rel. Horne v. AutoZone, Inc.*, 227 Ariz. 471, 476, ¶ 10 (App. 2011), *vacated in part on other grounds*, 229 Ariz. 358 (2012). In the case of an alleged act, the statute

only requires the "intent to do the act involved," but not the intent to deceive. *Id.* at 476-77, ¶ 12. In the case of an alleged omission, the statute requires the intent that others rely on the alleged omission, but not the intent to deceive. *Id.* at 478, ¶ 15. To succeed on their consumer fraud claims, Sanders and Jackson needed to prove Estate defendants and Jones made a misrepresentation or omitted a material fact in connection with the sale or advertisement of the property, and they suffered damages as a result of reliance on the misrepresentation or omission of a material fact. A.R.S. § 44-1521(7), -1522(A); *Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 520-21 (App. 1979) (discussing elements for a private cause of action under the CFA). In the case of an omission, they needed to show Estate defendants and Jones intended they rely on the omission. *Id.*

¶19 Sanders and Jackson also alleged Estate defendants and Jones committed the tort of negligent misrepresentation because they had a duty to disclose latent defects in the property and failed to do so, that they knew Sanders and Jackson would rely on their representations and omissions concerning the property and failed to exercise reasonable care, and that they justifiably relied on Estate defendants' and Jones' representations and omissions and were damaged by them. Arizona recognizes the tort of negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1977), which provides in part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Kuehn v. Stanley*, 208 Ariz. 124, 127, ¶ 9 (App. 2004) (quoting Restatement (Second) of Torts § 552 (1977)).

¶20 Last, Sanders and Jackson alleged that the Estate committed common law fraud by making "representations and omissions [that] were intentionally and knowingly false and intended to defraud." "The elements of common law fraud are a material, false representation, scienter, the fraudfeasor's intent to induce reliance upon the misrepresentation, the fraud victim's ignorance of its falsity, his actual, reasonable reliance, and his consequent and proximate injury." *Parks*, 121 Ariz. at 520.

**¶21**     Sufficient evidence supported the jury's verdicts.   Harris testified that she did not intend to deceive Sanders and Jackson and had no knowledge of any potential material omissions or misrepresentations in the information provided to him about the house.   Although Harris testified that she knew the water heater had flooded and the kitchen slab had a crack, other evidence showed that Passey corrected the drywall damage around the water heater and repaired the slab crack before the Estate sold the house to Sanders.   In response to questions from the jurors, Harris further testified that she was unaware of mold, termite damage, water damage, or issues with the roof of the house.   Passey testified that he completed all of his repairs consistent with industry standards and did not see mold in the house.

**¶22**     Jones testified that he helped Harris, an elderly woman in her eighties who had never lived in the house, complete the seller's disclosure statement to the best of his ability "from what I remembered at the time," and further testified that "to my knowledge, I was helping [the Estate] disclose what . . . they knew, what I knew."   Jones testified that he had not been privy to Passey's repairs, and that he did not fail to disclose known material issues about the house.   Jones testified that he believed he had over-disclosed on the seller's disclosure statement.   Jones testified that, contrary to Jackson's testimony, he never told Sanders or Sanders' real estate agent that there was no mold at the property.

**¶23**     Viewing the evidence in the light most favorable to sustaining the verdict, we cannot find the superior court abused its discretion by denying Sanders' and Jackson's motion for a new trial.   A reasonable juror could conclude that they failed to meet their burden of establishing the elements of their claims against Estate defendants and Jones. *See Ogden*, 201 Ariz. at 36, ¶ 15.

III.    Attorneys' Fees and Sanctions

**¶24**     Finally, Sanders and Jackson argue the superior court erred and abused its discretion by awarding the Estate attorneys' fees, costs, and Rule 68 sanctions.   At the outset, we note that although Sanders and Jackson argue the superior court's judgment awarding attorneys' fees was not a final judgment because it did not have Rule 54(c) language, as noted *supra* ¶ 10, the court entered a signed judgment with a certification of finality pursuant to Rule 54(c) in February 2020.

**¶25**     Section 12-341.01 authorizes an award of attorneys' fees in contested contract actions. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567,

569 (1985). Fee awards under A.R.S. § 12-341.01 are permissive and the superior court has broad discretion to determine whether fees should be awarded. *Id.* at 570. If the record reflects a reasonable basis for the award, we will uphold it. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 267, ¶ 25 (App. 2004). We review the superior court's award of attorneys' fees for an abuse of discretion but review questions of law, including the court's authority to award attorneys' fees and contract interpretation, de novo. *Bennett Blum, M.D. Inc., v. Cowan*, 235 Ariz. 204, 205, ¶ 5 (App. 2014).

**¶26** "A tort claim will 'arise out of a contract' only when the tort could not exist 'but for' the breach or avoidance of the contract." *ML Servicing Co. v. Coles*, 235 Ariz. 562, 570, ¶ 31 (App. 2014) (citations omitted); *see also Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 543 (1982) ("The fact that . . . two legal theories are intertwined does not preclude recovery of attorney's fees under § 12-341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract.").

**¶27** In its fee application, the Estate sought fees against Sanders and Jackson in the amount of $164,826.59 pursuant to § 12-341.01. In October 2019, the superior court awarded the Estate $112,000 in attorneys' fees, costs in the amount of $1,977.51, and Rule 68 sanctions in the amount of $2,299 against Sanders and Jackson jointly and severally. In addition, the court granted the Estate's request to vacate the May 2017 judgment awarding the Estate $15,386.77 in attorneys' fees and $1,233.10 in costs against Jackson. The court incorporated those amounts into the October 2019 judgment. The superior court's judgment stated that "the actions by Plaintiffs Joshua Sanders and Cheryl Jackson in pursuing their Amended Complaint were taken in furtherance of and for the benefit of their marital community, and . . . any money judgments . . . against them or each of them may be satisfied from their community property and their separate property."

**¶28** The court did not err by awarding the Estate attorneys' fees pursuant to A.R.S. § 12-341.01. Here, as noted by the superior court, Sanders' and Jackson's claims arose out of contract because they were based on the alleged breach of Sanders' contract with the Estate. The fact that Sanders' contract and bad faith claims were dismissed as time barred does not factor into our analysis. Further, the court considered the factors set forth in *Warner*, 143 Ariz. at 570, before deciding to award fees, and the record reasonably supports the amount of the fee award.

**¶29** Sanders and Jackson argue the superior court erred by awarding the Estate attorneys' fees incurred in defending Harris

personally. Sanders' and Jackson's claims against the Estate and Harris personally were based on the same allegations concerning Harris' actions and the argument that her actions were attributable to the Estate. Accordingly, the fees sought were reasonable and necessary to defend the Estate.

¶30 Sanders and Jackson further argue the superior court erred by awarding attorneys' fees, costs, and sanctions against the marital community and Jackson's separate property, because the fees, costs, and sanctions were incurred after the superior court dismissed Jackson's claims against the Estate.

¶31 They also argue the superior court erred by awarding the Estate $16,619.87 "against the separate property and marital community of Sanders and Jackson from [the May] 2017 award against Jackson, individually."

¶32 "Generally, all debts incurred during marriage are presumed to be community obligations unless there is clear and convincing evidence to the contrary." *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10 (App. 2000). "Outside of the specific exceptions set forth in [A.R.S.] § 25-214, [t]he test of whether an obligation is a community debt is whether the obligation is intended to benefit the community." *Cardinal & Stachel, P.C. v. Curtiss*, 225 Ariz. 381, 383-84, ¶ 7 (App. 2010) (internal quotations omitted). Jackson became a party to the lawsuit early in the litigation when Sanders added her as a plaintiff when he filed the amended complaint. Together, Sanders and Jackson pursued this matter in their individual capacities and for the benefit of their marital community. We find no error in the judgment.

¶33 The Estate requests an award of attorneys' fees and costs on appeal pursuant to A.R.S. § 12-341.01 and the contract. Sanders and Jackson request costs on appeal. In our discretion, we award the Estate reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and taxable costs upon compliance with ARCAP 21.

**CONCLUSION**

¶34       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA

11