212 P.3d 874

**Elizabeth QUINTERO, as personal representative of the Estate of Luis Anaya Soto, Plaintiff/Appellant,**

**v.**

**Matthew RODGERS and Jane Doe Rodgers, husband and wife, Defendants/Appellees.**

**No. 1 CA–CV 07–0698.**

Court of Appeals of Arizona, Division 1, Department C.

May 12, 2009.

---

Bedford Douglass, Jr., Mesa, Attorney for Plaintiff/Appellant.

The Cavanagh Law Firm, P.A. By Steven D. Smith, Thomas C. Hall, Christopher Robbins, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

IRVINE, Judge.

¶ 1 Elizabeth Quintero ("Quintero"), widow to and personal representative of the estate of Luis Anaya Soto ("Soto"), appeals summary judgment in favor of Matthew and Jane Doe Rodgers. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This appeal arose from an automobile accident that occurred when Matthew Rodgers' ("Rodgers") vehicle collided with another vehicle, which then collided with Soto's vehicle.[1] After Soto filed suit against Rodgers, Soto died in an unrelated workplace accident. The court granted Quintero's motion to substitute herself for Soto in the suit against Rodgers.

¶ 3 Rodgers filed a motion for partial summary judgment on the issue of damages. Rodgers argued that Quintero could not make a claim for Soto's loss of enjoyment of life or for punitive damages. Rodgers relied on two theories: (1) Arizona's survival statute precludes damages for loss of enjoyment of life and for punitive damages, and (2) if the survival statute does not preclude punitive damages, then the court should not permit Quintero to argue punitive damages to the jury because the evidence did not meet the required clear and convincing threshold.

---

1. As Rodgers approached an intersection, he swerved to avoid hitting a vehicle turning left in front of him. Rodgers lost control of his vehicle, it "fish-tailed" and crossed over the center median, hitting the car that collided with Soto's vehicle.

The trial court granted the motion for partial summary judgment without specifying a basis for its decision. The parties then reached a settlement where Rodgers would reimburse Soto's estate for the medical expenses it incurred, and Soto's estate preserved its right to appeal the grant of partial summary judgment on damages. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A) and –2101(D) (2003).

## DISCUSSION

¶ 4 On appeal, Quintero argues that Arizona's survival statute does not preclude an award for loss of enjoyment of life or for punitive damages. She also argues that the evidence supports an award for punitive damages.

## A. Survivability of Loss of Enjoyment of Life Claim

¶ 5 Although common law precluded a decedent's right to pursue an action for personal injury against a tortfeasor, most states now permit it through survival statutes. 1 Jacob A. Stein, *Stein on Personal Injury Damages*, §§ 3:65, 4:23 (3d ed.2008). Arizona's survival statute provides:

Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that *upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.*

A.R.S. § 14–3110 (2005) (emphasis added). We have not previously addressed whether damages for loss of enjoyment of life or punitive damages are precluded by Arizona's survival statute. The parties cite numerous

cases from across the country regarding this issue. Nevertheless, because survival statutes and the interpretation of them vary greatly from state to state, we do not find a survey of the law in other jurisdictions particularly enlightening in interpreting § 14–3110. Therefore, we focus on the Arizona statute.

¶ 6 In enacting § 14–3110, the Arizona Legislature extended the right of a decedent's personal representative to pursue the decedent's personal injury claim against a tortfeasor, but it did not extend that right to include damages that would compensate the decedent for his "pain and suffering." *Harrington v. Flanders*, 2 Ariz.App. 265, 267, 407 P.2d 946, 948 (1965) ("The Legislature apparently contemplated that once an injured person is dead he cannot benefit from an award for his pain and suffering."). The issue here is whether damages for loss of enjoyment of life are meant to be included within pain and suffering under § 14–3110. We conclude that they are. In the context of this statute, an award for damages for loss of enjoyment of life equates to an award for a form of pain and suffering. Therefore, recognizing a right to pursue damages for loss of enjoyment of life when the statute excludes damages for the decedent's "pain and suffering" would be contrary to the Legislature's intent.

¶ 7 Quintero acknowledges that if damages for loss of enjoyment of life are part of, or are another way of saying damages for "pain and suffering," then an award of damages derived from such a loss would not survive Soto's death. Quintero argues, however, that damages for loss of enjoyment of life, also known as "hedonic" damages, are separate from damages for pain and suffering, relying on *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 31 P.3d 806 (App.2001). Quintero asserts that Ogden "specifically held that 'hedonic damages' are separate from damages for pain and suffering." [2]

2. Hedonic damages are "[d]amages that attempt to compensate for the loss of the pleasure of being alive." Black's Law Dictionary 417 (8th ed.2004). They compensate an injured party for "the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the nor-

mal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations." *Ogden*, 201 Ariz. at 39, ¶ 31, 31 P.3d at 813 (quoting *Boan v. Blackwell*, 343 S.C. 498, 541 S.E.2d 242, 244 (2001)).

¶ 8 We read Ogden differently. Ogden addressed whether a jury instruction for damages for loss of enjoyment of life permitted double recovery for pain and suffering in a case where damages for pain and suffering were legitimately before the jury. 201 Ariz. at 38, ¶¶ 26–27, 31 P.3d at 812. We held that the instruction on loss of enjoyment of life was not in error, explaining that there was no reason to prevent Ogden from introducing evidence about her loss of enjoyment or diminution in her ability to participate in an activity. Id. at 39, ¶¶ 29–31, 31 P.3d at 813. We concluded that "hedonic damages *can* be a component of a general damages claim, distinguishable from, and not duplicative of, damages for pain and suffering." *Id.* at 812, ¶ 26, 31 P.3d at 38 (emphasis added).

¶ 9 *Ogden* stands for the proposition that when a jury makes a general damages determination, a court may properly instruct it on damages for loss of enjoyment of life as a component of general damages without necessarily duplicating damages awarded for pain and suffering. Ogden did not find that hedonic damages are distinct from pain and suffering; it found that each damages claim was a slightly different way of arguing for a general damages award.

¶ 10 We will not extend the rationale of Ogden to exclude loss of enjoyment of life from the category of damages for "pain and suffering" that are barred under the survival statute. Quintero offers no persuasive distinction between the two. Therefore, we find A.R.S. § 14–3110 does not allow Quintero to recover damages for Soto's loss of enjoyment of life resulting from Rodgers' negligence.

**B. Survivability of Soto's Punitive Damages Claim**

¶ 11 Quintero argues that Soto's claim for punitive damages survives his death because our survival statute does not preclude punitive damages. We agree.

¶ 12 Unlike damages for loss of enjoyment of life, punitive damages are not aimed "at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v. Baker,* —— U.S. ——, ——, 128 S.Ct. 2605, 2621, 171 L.Ed.2d 570 (2008). They do not compensate for a victim's injuries or pain and suffering. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986) ("[P]unitive damages are those damages awarded in excess of full compensation to the victim."). Therefore, "punitive" or "exemplary" damage actions survive the death of the plaintiff unless § 14–3110 states otherwise.[3] It does not.

¶ 13 As noted above, § 14–3110 allows "[e]very cause of action" to survive the death of the plaintiff, except for causes of action unrelated to the case at bar and for damages for pain and suffering. Arizona currently permits punitive damage awards against a tortfeasor's estate. *Haralson,* 201 Ariz. at 4, ¶ 13, 31 P.3d at 117. In *Haralson,* the tortfeasor died in a motor vehicle collision, and the plaintiff sued his estate. The court found "no logical reason why courts should allow a punitive award against a defendant who survives a judgment, but deny it where death occurs earlier." *Id.* at 4, ¶ 16, 31 P.3d at 117. *Haralson* further rejected the idea that statutory "silence is an expression of legislative intent." *Id.* at 5, ¶ 18, 31 P.3d at 118 (emphasis omitted); *Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 106, 859 P.2d 724, 729 (1993). We continue that rationale here. Therefore, we hold that actions for punitive damages survive the death of the plaintiff as well as the death of the tortfeasor.

**C. Grounds for Punitive Damages**

¶ 14 Because the trial court rejected Quintero's punitive damage claim without specifying a reason, we also address whether the evidence supports such a claim. Quintero argues that the facts justify a punitive damage award because, based on the record, Rodgers knew or should have known his actions constituted a conscious disregard of a substantial risk of significant harm to others.

---

**3.** "Punitive damages have always served to set an example; hence, the terms 'punitive' and 'exemplary' are used interchangeably in our law."

*Haralson v. Fisher Surveying, Inc.,* 201 Ariz. 1, 3, ¶ 6, 31 P.3d 114, 116 (2001).

¶ 15 We rely on a line of cases beginning with *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986), that clarify Arizona's position on punitive damage recovery. In *Rawlings,* a farmer brought an action against his neighbor, who negligently started a fire that caused damage to the farmer's hay barn, and against his insurer, which breached its covenant of good faith and fair dealing by refusing to honor his insurance policy. *Id.* at 152–53, 726 P.2d at 568–69. For a fact finder to award punitive damages after *Rawlings,* a plaintiff must prove "[s]omething more than the mere commission of a tort." Id. at 162, 726 P.2d at 578. The tortfeasor's mental state determines whether a jury can award punitive damages. *Linthicum,* 150 Ariz. at 330, 723 P.2d at 679. His actions must surpass "gross negligence or mere reckless disregard of the circumstances." *Id.* at 331, 723 P.2d at 680 (quoting *Tuttle v. Raymond,* 494 A.2d 1353, 1361 (Me.1985)). The plaintiff must prove "something more"—that the tortfeasor's "evil hand was guided by an evil mind." *Rawlings,* 151 Ariz. at 162, 726 P.2d at 578.

¶ 16 A tortfeasor manifests an "evil mind" if he either "intended to injure the plaintiff" or "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Gurule v. Ill. Mut. Life and Cas. Co.,* 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987) (quoting *Rawlings,* 151 Ariz. at 162, 726 P.2d at 578). His conduct need not be "outrageous" in order for the plaintiff to recover, but he must "continue [ ] his actions despite the inevitable or highly probable harm that would follow." *Id.* Further, the plaintiff must establish intent or conscious pursuit with "clear and convincing evidence" that the tortfeasor's conduct "was motivated by spite, actual malice, or intent to defraud" or by a "conscious and deliberate disregard of the interests and rights of others." *Id.* at 602–03 n. 3, 734 P.2d at 87–88 n. 3.

¶ 17 If a court finds that "a reasonable jury could find the requisite evil mind by clear and convincing evidence," then the court must deny a motion for summary judgment on the issue of punitive damages. *Thompson v. Better–Bilt Aluminum Prods. Co.,* 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992); *White v. Mitchell,* 157 Ariz. 523, 529, 759 P.2d 1327, 1333 (App.1988) ("[A] jury will not be permitted to consider an award of punitive damages if the evidence supporting such an award is only slight and inconclusive."). A court will allow a jury to consider a punitive damages award if sufficient "circumstantial" evidence exists. *White,* 157 Ariz. at 529, 759 P.2d at 1333. This evidence, however, must show that the tortfeasor was "aware of and consciously disregarded a substantial and unjustifiable risk that significant harm would occur." *Id.* (emphasis omitted).

¶ 18 A trial court should view the evidence and draw reasonable inferences from it "in a light most favorable" to the party opposing the motion. *Thompson,* 171 Ariz. at 558, 832 P.2d at 211. "[I]f no reasonable jury could find the requisite evil mind by clear and convincing evidence," then the court should grant a motion for summary judgment. *Id.*

¶ 19 Here, Quintero alleges that Rodgers approached the intersection at a speed of "at least 70 miles per hour and he was probably going 75–80 miles per hour" in a 45 miles per hour zone. Instead of applying his brakes to avoid a vehicle turning left in front of him, Rodgers "pumped" his brakes "not forcefully, [but] slightly," then "swerved" to avoid the on-coming vehicle. In doing so, he fishtailed and crossed over the median into oncoming traffic. Rodgers collided with another vehicle, which then collided with Soto's vehicle. Rodgers pled guilty to reckless driving and endangerment as defined by A.R.S. §§ 13–1201(A) (2001) and 28–693(A) (Supp.2007).[4]

¶ 20 Quintero requests us to reverse the trial court's decision granting the defendant's motion for summary judgment. To do so, we must decide whether a fact-finder could conclude that Rodgers deliberately intended to

---

4. Arizona Revised Statutes § 13–1201(A) states: "A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." Arizona Revised Statutes § 28–693(A) states: "A person who drives a vehicle in reckless disregard for the safety of persons or property is guilty of reckless driving." We cite to the current version of the applicable statute because no revisions material to this decision have since occurred.

cause the collision or handled his vehicle with a conscious and deliberate disregard for the others on the roadway. "Because in granting or denying such a motion the judge is not a fact finder, the evidence and all reasonable inferences that may be drawn from the evidence should be construed in a light most favorable to the non-moving party." *Thompson*, 171 Ariz. at 558, 832 P.2d at 211.

¶ 21 Many of the cases in which we permit punitive damage awards include a series of events of deliberate bad faith or breaches of duty. There is, however, no authority that prevents a punitive damage award arising from a single event. "While some of the evidence might equally reasonably support alternative inferences that do not suggest an evil mind, the choice among reasonable inferences is one properly reserved for the jury." Id. at 558 n. 14, 832 P.2d at 211 n. 14.

■ ¶ 22 Generally, "exceeding the speed limit is insufficient by itself to support punitive damages." *Ranburger v. S. Pac. Transp. Co.*, 157 Ariz. 551, 554, 760 P.2d 551, 554 (1988). The record in this case, however, indicates more circumstantial evidence than Rodgers' excessive speed alone. For a period of time prior to the accident, Rodgers weaved in and out of traffic at a high rate of speed. Rodgers pled guilty to reckless driving and endangerment. The applicable statutes establish that Rodgers' conduct consisted of "recklessly endangering" and "reckless disregard for the safety of persons or property." A.R.S. §§ 13–1201(A), 28–693(A). *Rawlings* states that "punitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur." 151 Ariz. at 162, 726 P.2d at 578 (quoting A.R.S. § 13–105(5)(c) (1985)). *Rawlings* cites to the definition of "reckless-

ly," a word mentioned three times in the statutes to which Rodgers pled guilty.

■ ¶ 23 Rodgers asserts that "he had no idea that his plea would ever be held against him in a later civil proceeding." Nevertheless, A.R.S. § 13–807 (2001) states,

A defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding brought by the victim or this state against the criminal defendant the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas.

Rodgers' admissions of recklessness in his misdemeanor convictions preclude him from denying recklessness in Quintero's suit. His reckless behavior is the precise conduct *Rawlings* cited to as an example of when a jury may find punitive damages appropriate.[5]

¶ 24 Based on the record, each party possesses evidence that helps prove or disprove Rodgers' conscious pursuit of a course of conduct that he knew would create a substantial risk of significant harm to others. If a court finds that "a reasonable jury could find the requisite evil mind by clear and convincing evidence," then it must allow the jury to decide the issue. *Thompson*, 171 Ariz. at 558, 832 P.2d at 211. Therefore, Quintero's punitive damages claim should not have been dismissed on summary judgment.

## CONCLUSION

¶ 25 We hold that § 14–3110 precludes damages for loss of enjoyment of life. We also hold that a claim for punitive damages survives the death of a plaintiff. In this case, based upon the combination of circumstantial evidence, a reasonable jury could find Rodgers acted with sufficient recklessness for it to award punitive damages. We affirm the trial court's decision with regard to damages for

---

5. Appellee asserts that A.R.S. § 13–807 does not apply to his misdemeanor convictions because the legislature intended it to apply only to felony convictions. His authority for the limited scope of § 13–807 is an applicability provision in a 1993 bill that included an amendment to § 13–807. Laws 1993, ch. 255, § 99. Section 99 stated that "[t]he provisions of §§ 1 through 86 and §§ 89 through 95 of this act apply only to persons who commit a felony offense after the

effective date of this act." The amendment to § 13–807 was included in section 15 of chapter 255, and added to the current version of the statute the words "brought by the victim or this state against the criminal defendant." We read section 99 as simply limiting the scope of the amended language to later felonies. We do not read it as barring § 13–807 from applying to misdemeanor convictions.

loss of enjoyment of life and reverse with regard to the punitive damages issue.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and PHILIP HALL, Judge.