NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LAURA H. CONNELL, *Plaintiff/Appellee,*

*v.*

EDWARD F. CONNELL, III, *Defendant/Appellant.*

No. 1 CA-CV 20-0132
FILED 3-2-2021

Appeal from the Superior Court in Maricopa County
No. CV 2017-055452
The Honorable Theodore Campagnolo, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Zachar Law Firm, P.C., Phoenix
By David J. Catanese
*Counsel for Plaintiff/Appellee*

Edward F. Connell, III, Scottsdale
*Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Peter B. Swann joined.

---

**C A T T A N I**, Judge:

¶1            Edward Connell III appeals the judgment for compensatory and punitive damages in favor of his ex-wife Laura Connell.[1]  For reasons that follow, we vacate the judgment's interest award and remand for correction; in all other respects we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2            On September 5, 2016, a verbal argument between the parties escalated with Edward striking Laura across the side of her face, hitting her left temple and eye.  Laura ran from the room and called the police, and Edward left the house.  Laura sought and received an order of protection against Edward, and they soon divorced.

¶3            After the incident, Laura began to experience vision issues, later accompanied by dizziness, increased fatigue, and difficulty concentrating, all of which inhibited her job performance.  She was diagnosed initially with a contusion to her left eye, and as more symptoms developed, her treating physicians concluded that she had suffered a concussion and resulting traumatic brain injury.

¶4            Laura ultimately sued Edward for assault and battery, seeking compensatory damages (medical expenses, loss of earnings, and pain and suffering) and punitive damages.  At trial, Edward argued that Laura was not credible and had fabricated the case for monetary gain, that he had hit her only in self-defense, and that Laura's damages were caused not by the September incident but rather by her preexisting chronic fatigue syndrome.  After the court denied Edward's motion for judgment as a matter of law, the jury returned a verdict in Laura's favor, awarding her $150,000 in compensatory damages and $250,000 in punitive damages.

¶5            The superior court entered judgment for Laura, including costs and Rule 68 sanctions of expert witness fees and double taxable costs

---

[1]        To avoid confusion, we refer to the parties by first name.

post-offer, plus 6% interest on the total amount from the date of the jury's verdict. After the court denied Edward's renewed motion for judgment as a matter of law or for new trial, Edward timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1), (5)(a).

## DISCUSSION

### I. Jury Bias.

¶6 Edward first argues that the superior court erred by empaneling a jury that included biased jurors. We review for an abuse of discretion the superior court's voir dire rulings, as well as its rulings on motions to strike the panel at large or individual jurors for cause. *See State v. Glassel*, 211 Ariz. 33, 45, 47, ¶¶ 36, 46 (2005).

¶7 Each party is entitled to be tried by a fair and impartial jury. *Moran v. Jones*, 75 Ariz. 175, 181 (1953); *see also* Ariz. Const. art. 2, § 23. To effectuate that right, prospective jurors are subject to thorough questioning to ensure that prospective jurors are "qualified, fair, and impartial." Ariz. R. Civ. P. 47(c)(3)(A). Any prospective juror who has shown bias or prejudice for or against any party may be struck from the panel for cause. *See* Ariz. R. Civ. P. 47(d)(1)(D); *see also* A.R.S. § 21-211(4).

¶8 Edward asserts that the entire jury pool was tainted by Prospective Juror 4's comment that she was "already biased" and would, if empaneled, rule for Laura because "I can tell she's been abused." Edward argues that, although Prospective Juror 4 was dismissed for cause on this basis, the other jurors were tainted by her comment, and that the court thus erred by denying his request to strike the entire panel. But the court quickly stopped Prospective Juror 4's commentary and followed up by instructing the panel that Prospective Juror 4's opinion was not evidence and expressly inquiring whether anyone was "affected by number 4 to the point that they could not be fair in this case." Given the superior court's prompt curative steps, Edward has not shown error. *See State v. Carlson*, 202 Ariz. 570, 578 ¶ 27 (2002) (noting that a defendant "must show that the jurors have formed preconceived notions concerning [her] guilt and that they cannot lay those notions aside") (alteration in original and citation omitted).

¶9 Edward further asserts that three of the jurors ultimately empaneled—Prospective Jurors 3, 11, and 31—were biased against him. But Edward did not challenge any of these prospective jurors for cause, nor does the record establish such bias. Although Prospective Juror 3 was initially unsure whether he could be fair and impartial in a domestic violence case, he later affirmed that he could set aside any preconceived

notions and determine the case based on the evidence presented during trial. The court followed up on Prospective Juror 11's hesitation about impartiality in a domestic violence case, but her response to the court's rehabilitative question was simply listed as "INAUDIBLE," suggesting she affirmed an ability to listen to both sides—a conclusion supported by the fact that Edward opted not to challenge this prospective juror for cause. And Edward's argument that Prospective Juror 31 "did not believe self-defense could ever be a valid reason to hit a woman" appears to misconstrue the prospective juror's actual agreement with the notion that, even "leaving out the self-defense," sometimes "it's ok to, to hit another person." Given this record, and given Edward's apparent assessment at trial that none of these prospective jurors warranted a challenge for cause, he has not shown grounds for reversal.

## II.     Compensatory Damages.

**¶10**          Edward next argues that the jury's compensatory damages award was excessive and that the superior court thus erred by denying his request to reduce the award or for new trial. *See* Ariz. R. Civ. P. 59(a)(1)(E), (f)(1). We review this ruling for an abuse of discretion. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 581, ¶ 37 (App. 2015).

**¶11**          Generally, "the amount of an award for damages is a question peculiarly within the province of the jury." *Larriva v. Widmer*, 101 Ariz. 1, 7 (1966). If the court finds that the verdict clearly resulted from passion or prejudice, however, a new trial is necessary. *Desert Palm*, 236 Ariz. at 582, ¶ 38; *see also Soto v. Sacco*, 242 Ariz. 474, 478, ¶ 9 (2017). And the superior court has discretion, in appropriate circumstances, to "reduc[e] an excessive verdict to the realm of reason." *Desert Palm*, 236 Ariz. at 581, ¶ 38 (quoting *Muccili v. Huff's Boys' Store, Inc.*, 12 Ariz. App. 584, 590 (App. 1970)). Such remittitur is proper "only for the most cogent of reasons, such as lack of evidence supporting the damages awarded." *Id.*; *see also In re Estate of Hanscome*, 227 Ariz. 158, 162, ¶ 14 (App. 2011) (noting that "a clear indication that the jury misapplied the principles governing damages" may be a proper basis for remittitur); *Mealey v. Arndt*, 206 Ariz. 218, 221, ¶ 12 (App. 2003) (noting that "substantial evidence" sufficient to support a verdict is evidence that would permit a reasonable person to reach that result).

**¶12**          Here, the evidence presented provided ample support for the jury's award of $150,000 in compensatory damages for medical expenses, lost earnings, and pain and suffering. Laura's treating physicians and specialists testified that she had suffered a concussion and a resulting

traumatic brain injury from being struck by Edward in September 2016. The physicians described how Laura's brain injury was linked to eye pain and vision issues accompanied by balance problems, dizziness, and nausea; certain cognitive deficits including difficulties in communication, complex reasoning, and organization; as well as increased fatigue.

**¶13** In addition to presenting medical bills totaling almost $17,000, Laura described how her symptoms limited her productivity as a mortgage banking loan originator and offered testimony from a vocational expert comparing her pre- and post-injury earnings to calculate more than $63,000 in lost earnings attributable to the head injury. And the variety, scope, and almost two-year duration of physical and cognitive symptoms resulting from the injury provided a sufficient basis for the additional $70,000 awarded as compensation for her pain and suffering.

**¶14** Edward's contrary argument primarily attacks Laura's credibility, asserting that her testimony was false and fundamentally inconsistent, and that because the medical providers relied on Laura's report of symptoms and medical history, their testimony was similarly unsound. But "[t]he credibility of a witness' testimony and the weight it should be given are issues particularly within the province of the jury." *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000); *see also State v. Fischer*, 242 Ariz. 44, 50, ¶ 19 (2017). And here, on appeal from a denial of a request for remittitur or new trial, we similarly "defer to the discretion of the trial judge who tried the case and who personally observed the proceedings" and thus had the opportunity to observe the witnesses. *Fischer*, 242 Ariz. at 50, ¶ 21; *see also Creamer v. Troiano*, 108 Ariz. 573, 575 (1972). Accordingly, and given an adequate evidentiary basis to support the award, the superior court did not abuse its discretion by denying Edward's motion asserting excessive compensatory damages.

## III. Punitive Damages.

**¶15** Edward next challenges the award of punitive damages, arguing both that the evidence did not support any award of punitive damages and that $250,000 was an excessive award. We review the jury's decision to award punitive damages for an abuse of discretion, *Ahmed v. Collins*, 23 Ariz. App. 54, 58 (App. 1975), although we consider de novo constitutional challenges to the amount of such an award. *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 609, ¶¶ 83–84 (App. 2012).

**¶16** Punitive damages may be awarded in tort cases "to punish the wrongdoer and to deter others from emulating his conduct." *Linthicum*

*v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330 (1986). To warrant an award of punitive damages, the plaintiff must show, by clear and convincing evidence, "[s]omething more than the mere commission of a tort": that the "tortfeasor's 'evil hand was guided by an evil mind.'" *Quintero v. Rogers*, 221 Ariz. 536, 541, ¶¶ 15–16 (App. 2009) (alteration in original) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986)). The tortfeasor may manifest such an "evil mind" by committing malicious actions with an "intent to injure the plaintiff," *Linthicum*, 150 Ariz. at 331, including "wrongful conduct [that] was motivated by spite [or] actual malice." *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 602 (1987). The existence of an "evil mind" may be "express or may be implied from the nature of the acts and the circumstances." *Johnson v. Pankratz*, 196 Ariz. 621, 624, ¶ 13 (App. 2000).

¶17 Here, contrary to Edward's assertion, the record supports a finding that his actions were reprehensible and motivated by malice and an intent to injure Laura. Laura described Edward flying into a rage as their argument escalated, then throwing a knife and fork at her before charging across the room to strike her across the face. Edward admitted throwing the knife and fork, although he claimed not to have thrown them at Laura. He also admitted hitting her and, at least initially, that there was "no excuse" for his conduct.

¶18 While Edward characterized his actions as just "lightly slapp[ing]" Laura and now suggests that body camera footage from the evening of the incident undermines Laura's claim that she was injured, the jury was free to weigh this characterization against Laura's description of events and the medical evidence showing that Laura sustained a significant resulting injury. *See Estate of Reinen*, 198 Ariz. at 287, ¶ 12 (describing witness credibility and weight of evidence as matters for the jury). Moreover, Laura's testimony that Edward had been physically violent against her on multiple previous occasions, along with evidence that Edward had previously committed domestic violence against his first wife, provided additional support for an award of punitive damages to deter future misconduct. *See Gurule*, 152 Ariz. at 601 (noting that compensatory damages provide adequate deterrence "[i]f defendant did not act with an 'evil mind'").

¶19 Edward further argues that the amount of the award was untethered to the evidence and was so excessive as to violate due process. Due process imposes a substantive limit on the amount of a punitive damages award. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In assessing the reasonableness of an award, we consider factors including "the degree of reprehensibility of the defendant's misconduct"

and "the disparity between the . . . harm suffered by the plaintiff and the punitive damages award," *id.* at 418, as well as "the proportionality of the award to the wrongdoer's financial position to ensure that the goals of punishment and deterrence are served without financially devastating the defendant." *Hyatt Regency Phx. Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 134 (App. 1995).

¶20 Here, Edward's conduct qualified as reprehensible: he caused Laura physical harm through intentional malice rather than accident, acted with indifference to her safety, and had done so before. *See Campbell*, 538 U.S. at 419. The $250,000 award of punitive damages was less than twice the amount of the compensatory award. *See id.* at 424–25 (rejecting a bright-line ratio that passes constitutional muster, but reiterating that "[s]ingle-digit multipliers are more likely to comport with due process" and noting a prior decision suggesting that a ratio greater than four to one "might be close to the line"). And the jury heard evidence that Edward's recent annual income exceeded $300,000 per year and that he had other assets, supporting a $250,000 punitive damages award. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 497 (1987) ("Obviously, the goals of punishment and deterrence would be circumvented if the financial position of the defendant allowed it to comfortably absorb the award."). Accordingly, we affirm the award of punitive damages.

## IV.   Interest.

¶21 Edward argues that the judgment improperly awarded interest beginning on the date of the jury verdict rather than the date of the entry of the judgment. We agree that the interest award was faulty.

¶22 The judgment, entered December 20, 2019, contained monetary awards to Laura in four categories: (1) $150,000 in compensatory damages, (2) $250,000 in punitive damages, (3) $648.48 in pre-Rule 68 offer of judgment taxable costs, and (4) $8,892.80 in expert fees and double taxable costs post-offer as Rule 68 sanctions. The judgment awarded these amounts (totaling $409,541.20) with 6% interest "on the total amount of the judgment," running "from the date of the jury's verdict on October 23, 2019." The jury's verdict liquidated Laura's claim for compensatory damages, entitling her to prejudgment interest on that amount from the date of the verdict.[2] *See* A.R.S. § 12-347 (calling for inclusion of "interest on

---

[2] Laura could have received prejudgment interest on this portion of the award beginning on the date of her offer of judgment as a component

the verdict from the time it was rendered"); A.R.S. § 44-1201(D)(1) (prohibiting prejudgment interest on any unliquidated claim); *Hall v. Schulte*, 172 Ariz. 279, 284–85 (App. 1992) (holding that the jury's verdict liquidated a plaintiff's previously unliquidated claim for damages based on pain, suffering, and psychological injury, meaning prejudgment interest should run from the date of the verdict); *Emps. Mut. Cas. Co. v. McKeon*, 170 Ariz. 75, 78 (App. 1991) (noting an entitlement to prejudgment interest on any liquidated claim, whether based in contract or tort).

**¶23** But neither the amount of taxable costs nor the Rule 68 sanction amount (including reasonable expert witness fees) had been determined or otherwise liquidated at that point. *Cf. Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co.*, 218 Ariz. 13, 25, ¶ 50 (App. 2008) (holding that an amount dependent on a reasonableness determination is not liquidated until the court in fact determines reasonableness). And § 44-1201(D) prohibits an award of interest—prejudgment or post-judgment—on punitive damages.

**¶24** Accordingly, we vacate the interest award and remand for the superior court to enter a judgment awarding Laura: (1) $150,000 in compensatory damages, with interest at the statutory rate of 6.0% from the date of the jury's verdict on October 23, 2019 until paid in full; (2) $250,000 in punitive damages, with no interest award; and (3) $648.48 in pre-Rule 68 offer of judgment taxable costs, and $8,892.80 in Rule 68 sanctions, both with interest at the statutory rate of 5.75% from December 20, 2019 until paid in full.

---

of the Rule 68 sanctions. *See* Ariz. R. Civ. P. 68(g)(2); *Metzler v. BCI Coca-Cola Bottling Co. of L.A., Inc.*, 235 Ariz. 141, 146, ¶ 20 (2014). But her request for Rule 68 sanctions sought only expert witness fees and double taxable costs, *see* Ariz. R. Civ. P. 68(g)(1), not prejudgment interest on this previously unliquidated claim, *see* Ariz. R. Civ. P. 68(g)(2), so her entitlement to interest is now limited to after the date the jury's verdict liquidated the claim. *See Metzler*, 235 Ariz. at 144, ¶ 11.

**CONCLUSION**

¶25        For the foregoing reasons, we vacate the judgment's award of interest and remand for entry of judgment as set forth above.  In all other respects, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA