IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

————————————————

AMY PURDY, AS WRONGFUL DEATH STATUTORY TRUSTEE ON BEHALF OF THE
SURVIVORS OF DECEDENT MARGERY ANN JONES, AND JOHN BROSS,
*Petitioners*,

*v.*

HON. D. DOUGLAS METCALF,
JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA,
IN AND FOR THE COUNTY OF PIMA,
*Respondent*,

*and*

REPUBLIC SERVICES OF ARIZONA HAULING, LLC; REPUBLIC SERVICES, INC.,
A DELAWARE CORPORATION; ISIDRO E. ROSAS HERNANDEZ
AND JANE DOE ROSAS HERNANDEZ,
*Real Parties in Interest*.

No. 2 CA-SA 2021-0039
Filed November 8, 2021

————————————————

Special Action Proceeding
Pima County Cause No. C20195037

**JURISDICTION ACCEPTED; RELIEF GRANTED**

————————————————

COUNSEL

Wagstaff & Cartmell LLP, Kansas City, Missouri
By Jack T. Hyde, Jeffrey M. Kuntz, and Adam S. Davis

and

Miller, Pitt, Feldman & McAnally P.C., Phoenix
By José de Jesus Rivera and Nathan B. Webb
*Counsel for Petitioners*

Humphrey & Petersen P.C., Tucson
By Andrew J. Petersen and Joseph H. Ricks

Ernest S. Bustamante & Associates PLLC, Phoenix
By Ernest S. Bustamante

and

Wright Close & Barger LLP, Houston, Texas
By Thomas C. Wright and Jessica Z. Barger
*Counsel for Real Parties in Interest*

---

**OPINION**

---

Vice Chief Judge Staring authored the opinion of the Court, in which Presiding Judge Espinosa and Judge Eppich concurred.

---

S T A R I N G, Vice Chief Judge:

¶1     Special-action petitioners Amy Purdy and John Bross, plaintiffs in the underlying action, challenge the respondent judge's grant of partial summary judgment on the issue of punitive damages in favor of real parties in interest Republic Services of Arizona Hauling LLC, Republic Services Inc. (collectively, Republic), and Isidro Rosas Hernandez. The overarching issue is whether punitive damages are potentially recoverable in the underlying wrongful-death lawsuit, which arises from a motor-vehicle collision caused by a commercial truck driver, Hernandez, who was, among other things, allegedly using a cell phone at the time of the collision. For the reasons that follow, we accept special-action jurisdiction and grant relief.

## Factual and Procedural Background

¶2     We view the facts and reasonable inferences therefrom in the light most favorable to the petitioners as the non-moving party. *See Link v. Pima County*, 193 Ariz. 336, ¶ 12 (App. 1998). On August 5, 2019, around 11:11 a.m., Hernandez, who was employed by Republic as a residential garbage truck driver, was driving eastbound on Tangerine Road in the Town of Oro Valley. The Peterbilt garbage truck he was driving had a gross

vehicle weight of approximately 49,320 pounds, as well as complete sets of driving controls on both the left and right sides of the cab. At the time of the collision, Hernandez was using the controls on the right side. Margery Jones was stopped on North Innovation Market Drive at the intersection of Tangerine Road in her Honda Accord, with Bross, her husband, in the passenger seat. The light for northbound traffic on North Innovation Market Drive turned green, and Jones proceeded straight. Hernandez ran the red light, continuing on Tangerine Road into the intersection and collided with Jones's car, severely injuring Bross and killing Jones, who was pronounced dead at the scene.

¶3            In October 2019, Jones's surviving daughter, Purdy, and Bross filed this wrongful-death lawsuit against Republic and Hernandez (collectively, defendants), alleging claims of negligence; negligence per se; negligent hiring, training, supervision, and retention; negligent infliction of emotional distress; and punitive damages. The following came to light during discovery.

¶4            According to Republic's employee policy, operating the garbage truck from the right side of the cab is only permitted for trash pickup, during which the driver should never exceed fifteen miles per hour (mph).[1] The speed limit for Tangerine Road at the site of the collision is forty-five mph. Hernandez was driving 51.45 mph in the 8.5 seconds leading up to the collision.

¶5            Hernandez had two cell phones in his possession at the time of the collision—a personal phone and one issued by Republic. At the collision scene, an Oro Valley police officer inspected the personal phone, checking the call and text logs to see if Hernandez had any calls or messages at the time of the collision. The phone showed a call to Hernandez's supervisor, Jose Flores, at 11:10:35 a.m., and Flores, who was standing nearby, explained to the officer that Hernandez had called him to report the collision. Hernandez's personal phone was released to him, and, months later, when he was asked to turn it over for the lawsuit, all the data had been deleted. Flores took Hernandez's work-issued cell phone and placed it in his desk drawer at the office. The phone's service was turned off due

_____

[1]Although Republic's Safe Actions for Excellence handbook indicates that driving from the right side of a "[d]ual drive/stand up right side" truck is reserved for "collection . . . from stop to stop at speeds no greater than 20 mph," the door decal posted in Hernandez's "[d]ual drive/dual sit" truck stated that the driver should "never exceed 15 mph."

to inactivity, and, when Flores changed positions, his replacement sent the phone back to the service provider after finding it in the desk drawer. Republic's counsel was able to locate the phone and have it returned, but all the data from that phone had also been deleted.

¶6            Hernandez was charged with two counts of violating A.R.S. § 28-672, which makes a civil traffic violation a criminal misdemeanor when the violation causes serious physical injury or death.  At his deposition, Hernandez invoked the Fifth Amendment to the United States Constitution, refusing to answer any questions related to his cell-phone usage at the time of the collision.

¶7            In April 2021, defendants filed a motion for partial summary judgment on the issue of punitive damages.  They argued there was "no evidence that would persuade a rational trier of fact that . . . Hernandez acted with an 'evil mind.'"  Specifically, defendants asserted, "Running a red light at a speed slightly over the speed limit is nothing more than negligence."  In addition, they maintained there was "insufficient evidence to prove that . . . Hernandez was on a cell phone" and, even assuming he was, "[c]ell phone use alone . . . is insufficient for punitive damages."

¶8            In their opposition to the motion for partial summary judgment, plaintiffs argued there was "ample evidence" that Hernandez "was using a cell phone while he ran a red light at high speed."  They pointed out that an Oro Valley Police Department report placed the crash between 11:10:51 and 11:10:59 a.m., and Hernandez had phoned Flores at 11:10:35 a.m.—a call that lasted until 11:11:45 a.m.  Plaintiffs also observed that there had been "substantial" data transfers on both of Hernandez's cell phones that morning, including at the time of the collision.  To further support their claim that Hernandez had been using his phone, plaintiffs offered the affidavit of an expert who opined that Hernandez had been operating the truck on cruise control at the time of the collision.  Because the truck was "traveling at a constant" 51.45 mph in the "8.5 second period prior to impact," the expert observed that Hernandez must have set the cruise control at that speed.  In addition, plaintiffs maintained that, even if defendants were correct that cell-phone use alone does not support punitive damages, "there are numerous other factors present in this case that courts have held to support punitive damages," including speeding, running a red light, causing a severe crash, reckless driving, statutory violations, destruction of evidence, and dangerous driving history.

¶9            In their reply, defendants disputed that Hernandez had been on the phone with Flores at the time of the collision, pointing out that a

4

9-1-1 call reporting the collision came in at 11:10:49 a.m. They also asserted that any data usage had been the result of the network communicating with internet-enabled devices and did not establish Hernandez was actively using his phone. Additionally, they provided an affidavit from the Southwest Area Fleet and Equipment Manager, who stated that "[c]ruise control on the entire Republic fleet of Peterbilt trucks is disabled and only operable between 19-25 mph."

¶10 After hearing oral argument, the respondent judge granted the motion for partial summary judgment. The respondent explained that Hernandez's invocation of the Fifth Amendment "is not enough, by itself, to prove that he was distracted or did this intentionally or recklessly." The respondent further determined that the Oro Valley Police Department report would not be admissible at trial to show the time of the collision because "[t]here's no foundation as to where that number came from." The respondent thus concluded there was "no evidence" the collision had occurred after Hernandez initiated the call with Flores. He further determined plaintiffs had not met their burden of showing they were entitled to punitive damages by clear and convincing evidence. This petition for special action followed.

## Special-Action Jurisdiction

¶11 Our decision to accept special-action jurisdiction is "highly discretionary." Ariz. R. P. Spec. Act. 3 bar committee note. "We do not favor accepting special action jurisdiction to review the propriety of interlocutory orders and pretrial rulings, such as orders granting or denying partial summary judgment . . . ." *Piner v. Superior Court*, 192 Ariz. 182, ¶ 8 (1998). Instead, "[a]ppeal after final judgment is generally the proper remedy for trial court errors in granting motions for summary judgment." *Bledsoe v. Goodfarb*, 170 Ariz. 256, 257 (1991).

¶12 However, we may accept special-action jurisdiction when the respondent judge erred as a matter of law, *see Pima County v. McCarville*, 224 Ariz. 366, ¶ 6 (App. 2010), and addressing the issue "will serve the interests of judicial economy," *Althaus v. Cornelio*, 203 Ariz. 597, ¶ 3 (App. 2002); *see also ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶ 10 (App. 2004) (accepting special-action jurisdiction, in part, to avoid "unnecessary expenditure of time and money"). Additionally, special-action jurisdiction is appropriate if the case "involves an issue of first impression and an issue of law likely to recur." *Snyder v. Donato*, 211 Ariz. 117, ¶ 6 (App. 2005).

¶13          Here, as explained below, the respondent judge erred as a matter of law by granting the motion for partial summary judgment. Addressing the issue of punitive damages now will likely prevent a second trial after appeal. Moreover, the issue of whether punitive damages are recoverable in a lawsuit stemming from a motor-vehicle collision caused by a driver distracted by a cell phone is an issue of first impression that is likely to recur. We therefore exercise our discretion and accept special-action jurisdiction.

**Standard of Review**

¶14          The trial court must "grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Put another way, summary judgment is not appropriate if the court must evaluate the credibility of witnesses with different versions of material facts, weigh the quality of evidence, or choose among competing inferences. *Orme Sch. v. Reeves*, 166 Ariz. 301, 311 (1990). "In reviewing a decision on a motion for summary judgment, we determine *de novo* whether any genuine issues of fact exist and whether the trial court erred in its application of the law." *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, ¶ 14 (App. 2004).

¶15          "Summary judgment dismissing a punitive damages claim is appropriate in the absence of facts sufficient to show by clear and convincing evidence that the defendant acted with the requisite evil mind."[2] *SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, ¶ 74 (App. 2011). "If a court finds that 'a reasonable jury could find the requisite evil mind by clear and convincing evidence,' then the court must deny a motion for summary judgment on the issue of punitive damages." *Quintero v. Rogers*, 221 Ariz. 536, ¶ 17 (App. 2009) (quoting *Thompson v. Better-Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 558 (1992)). A tortfeasor manifests an "evil mind" for purposes of punitive damages "if he either 'intended to injure the plaintiff' or 'consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.'" *Id.* ¶ 16 (quoting *Gurule v. Ill. Mut. Life & Cas. Co.*, 152 Ariz. 600, 602 (1987)); *see also Linthicum v. Nationwide Life Ins. Co.*,

---

[2]"Evidence is clear and convincing if it makes 'the thing to be proved . . . highly probable or reasonably certain.'" *Parker v. City of Tucson*, 233 Ariz. 422, ¶ 39 (App. 2013) (alteration in *Parker*) (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 25 (2005)).

150 Ariz. 326, 330 (1986) ("The wrongdoer must be consciously aware of the wrongfulness or harmfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim."). And, a "defendant's state of mind may be evidenced by other factors and may be established or inferred even if [his] conduct was outwardly unexceptional." *Gurule*, 152 Ariz. at 602.

## Punitive Damages

**¶16** Plaintiffs argue the respondent judge erred by granting the motion for partial summary judgment because he "weighed the evidence and did not view [it] in the light most favorable to the Plaintiffs." They maintain, "Call logs, evidence that Hernandez's phones were using large volumes of data, and Hernandez's refusal to answer questions about phone use all show that Hernandez was using his phones during the fatal crash." In addition, they assert this case involves "numerous other factors" that "created a heightened risk of a serious crash," plus defendants destroyed "relevant evidence." Thus, they argue, the issue of punitive damages should be submitted to the jury.

**¶17** Generally, cell-phone use while driving, by itself, is insufficient to support an award of punitive damages. *See Saucedo ex rel. Sinaloa v. Salvation Army*, 200 Ariz. 179, ¶ 11 (App. 2001) ("To recover punitive damages, a plaintiff must prove something more than the underlying tort."); *cf. Quintero*, 221 Ariz. 536, ¶ 22 (speeding alone insufficient for punitive damages). However, under certain circumstances, an individual who is using a cell phone while driving may manifest an "evil mind" for purposes of punitive damages by consciously pursuing a course of conduct knowing that it creates a substantial risk of significant harm to others. *See Quintero*, 221 Ariz. 536, ¶ 16; *see also Grammatico v. Indus. Comm'n*, 211 Ariz. 67, n.6 (2005) (discussing studies that demonstrate talking on cell phones while driving is "extremely dangerous"); Thomas E. Sherzan, *"Talk 2 U L8R"—Why Cell Phones and Driving Have "G2G": An Analysis of the Dangers of Cell Phone Use While Driving*, 59 Drake L. Rev. 217, 224 (2010) (discussing dangers of texting while driving). Such circumstances will usually involve a "series of events of deliberate bad faith or breaches of duty." *Quintero*, 221 Ariz. 536, ¶ 21.

**¶18** Turning to the case before us, we must first consider the evidence of Hernandez's cell-phone use because the respondent judge treated it as dispositive in granting the motion for partial summary judgment. The record establishes Hernandez used both of his cell phones multiple times on the morning of the accident. The parties, however,

dispute whether Hernandez's call to Flores at 11:10:35 a.m. was during or after the collision, and they rely on conflicting reports of when the collision occurred. The respondent determined evidence from the Oro Valley Police Department report indicating the collision occurred between 11:10:51 and 11:10:59 a.m. would be inadmissible at trial because it lacked foundation. Below, plaintiffs admitted they had not yet "deposed anyone from the Oro Valley Police Department to determine where that number came from," and they do not appear to have contested the court's lack-of-foundation determination.[3] *See Ancell v. Union Station Assocs., Inc.*, 166 Ariz. 457, 460 (App. 1990) (objection to insufficient documentation required so offering party may have opportunity to cure alleged defects; deficiencies in supporting documents attached to summary judgment pleadings can be waived).

¶19       Even setting aside the call to Flores, however, plaintiffs also presented evidence that data transfers had occurred on Hernandez's cell phones at the time of the collision. An expert opined that the data transfers were "consistent with active usage by" Hernandez, pointing out that he may have been using an app or browsing the internet. Although defendants presented competing evidence—specifically, that "[d]ata usage will occur on a phone even without the owner of the phone actively using [it]"—that raises a genuine issue of material fact concerning whether Hernandez had been using his phone when he ran the red light.

¶20       The respondent judge seemingly rejected plaintiffs' evidence of data usage as too speculative, consistent with defendants' argument. *See Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, ¶ 19 (App. 2009) (sheer speculation insufficient to defeat summary judgment). But plaintiffs' expert based his opinion, in part, on the lack of data available to him during his inspection of the phones, which he concluded was the result of the data having been deleted after the accident. This is a sufficient fact upon which to base one's opinion. *See id.* (expert affidavit opposing motion for summary judgment must set forth specific facts to support opinion); *see also* Ariz. R. Civ. P. 56(e) (requiring "specific facts" showing

---

[3]In their reply brief, plaintiffs argue the evidence is admissible as "a certified police record." But we do not address arguments raised for the first time in a reply. *See Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, n.7 (App. 2007).

genuine issue for trial). Plaintiffs' evidence was therefore more than speculation.[4]

**¶21** Moreover, "litigants have a duty to preserve evidence which they know, or reasonably should know, 'is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.'" *Souza v. Fred Carries Conts., Inc.*, 191 Ariz. 247, 250 (App. 1997) (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)). It is difficult to believe that Republic—a sophisticated corporate entity—would not have been aware of these requirements. Further, even assuming defendants inadvertently failed to preserve the data on both cell phones, they should not, in effect, be rewarded with summary dismissal of plaintiffs' punitive-damages claim because plaintiffs' expert lacked the necessary information to fully form his opinions. *Cf. id.* (dismissal of complaint "too harsh a sanction" when plaintiff failed to preserve evidence); *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, ¶ 51 (App. 2013) (when party fails to preserve relevant evidence, trial court has discretion to impose sanctions, including instructing jury it may infer destroyed evidence would have been unfavorable to offending party).

**¶22** Plaintiffs also contend, "Another critical reason that the trial court should not have granted judgment as a matter of law on this issue is that Hernandez refused to answer any questions about phone use during his deposition." They point out that, "in civil cases, fact finders are entitled to draw negative inferences against those who assert Fifth Amendment rights against self-incrimination." *Wohlstrom v. Buchanan*, 180 Ariz. 389, 391 n.2 (1994); *see also Castro v. Ballesteros-Suarez*, 222 Ariz. 48, ¶ 20 (App. 2009). Defendants counter that an "adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

**¶23** However, "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Thompson*, 171 Ariz. at 558 (quoting

---

[4] In *Orme School*, our supreme court admonished that "summary judgment should not be used as a substitute for jury trials simply because the trial judge may believe the moving party *will* probably win the jury's verdict, nor even when the trial judge believes the moving party *should* win the jury's verdict." 166 Ariz. at 310.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). With a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson*, 477 U.S. at 255); *see also Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) ("Even assuming that a *jury* might draw such inferences, however, *we* are required at summary judgment to draw all reasonable inferences in favor of the non-moving party. . . ."). Hernandez's refusal to answer any questions related to his cell-phone use therefore does not affect our summary-judgment analysis. Nevertheless, as discussed above, the parties presented competing evidence on this issue, and the respondent judge erred by weighing it. *See Orme Sch.*, 166 Ariz. at 311.

¶24        Having found a genuine issue of material fact as to Hernandez's cell-phone use, we must next consider the other circumstances in this case to determine whether plaintiffs are in possession of clear and convincing evidence that Hernandez acted with the requisite "evil mind." *See SWC Baseline & Crismon Invs.*, 228 Ariz. 271, ¶ 74. Hernandez was a professional driver. *See Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 322-23 (App. 1984) (punitive damages may be awarded in higher amount against employer to encourage employer's close control over employees). Indeed, he was driving a twenty-five-ton garbage truck. As a result of Hernandez's conduct, Jones died and Bross suffered severe injuries. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 497 (1987) (severity of harm relevant factor in awarding punitive damages). Hernandez was charged with two criminal misdemeanors. *See Puz v. McDonald*, 140 Ariz. 77, 78-79 (App. 1984) (criminal sanctions factor to consider in award of punitive damages). He has a history of driving violations, including failing to stop for a red light in 2013 and crashing one Republic garbage truck into another in 2003. *Cf. Jones v. Manhart*, 120 Ariz. 338, 341 (App. 1978) (punitive damages properly submitted to jury in dog-bite case based on dog's history and owner's continued retention). And, as mentioned above, all the data was deleted from both of Hernandez's cell phones. *See Hawkins*, 152 Ariz. at 497 (defendant's concealment of misconduct relevant to determination of punitive damages).

¶25        Plaintiffs also contend Hernandez was driving "recklessly" because he ran a red light while speeding, using cruise control, and operating the truck from the right-side controls, in violation of Republic's express policy. *See Quintero*, 221 Ariz. 536, ¶¶ 22-24 (defendant's "reckless" behavior when weaving in and out of traffic at high rate of speed, which resulted in criminal convictions, sufficient to preclude summary judgment

on punitive damages). The parties agree that Hernandez ran a red light and that he was speeding at 51.45 mph. However, they dispute by how much he was speeding. Because Hernandez was driving from the right side of the truck and, pursuant to the decal affixed to the door, was not permitted to exceed fifteen mph, plaintiffs maintain he was speeding by more than thirty-five mph. Defendants, however, contend Hernandez was driving only six mph over the posted speed limit of forty-five mph. Defendants further assert that "driving from the right side of the truck did not affect the collision" because there were no obstructions in Hernandez's line of sight. But regardless of whether Hernandez driving from the right side affected the collision, the fact that he was doing so is evidence of his state of mind and disregard of express company safety policies, particularly when viewed in the totality of the circumstances. *See Gurule*, 152 Ariz. at 602 ("The inquiry in every punitive damage case focuses on the defendant's state of mind, which may be established by either direct or circumstantial evidence.").

¶26 The parties also dispute whether Hernandez was using cruise control. Plaintiffs offered the opinion of an expert that Hernandez's driving was consistent with "having the cruise control engaged" based on the steady speed of the truck, despite various changes in the accelerator pedal position. In response, defendants provided an affidavit from the Southwest Area Fleet and Equipment Manager that cruise control is disabled on Republic's fleet of Peterbilt trucks and "only operable between 19-25 mph." But, as plaintiffs point out, the manager's affidavit discusses the fleet generally without any specific mention of the truck involved in this collision. These disputes, therefore, raise genuine issues of material fact.

¶27 Viewing the facts and reasonable inferences in the light most favorable to plaintiffs, *see Link*, 193 Ariz. 336, ¶ 12, the circumstances presented here—including the cell-phone use, the running of the red light, the speeding, the driving from the right side of the truck, the use of cruise control, and Hernandez's status as a professional driver—constitute a "series of events of deliberate bad faith or breaches of duty," *Quintero*, 221 Ariz. 536, ¶ 21; *see also Saucedo*, 200 Ariz. 179, ¶ 13 ("The requisite intent and outrageous and egregious conduct must occur in tandem with the conduct giving rise to the injury in order to recover punitive damages."). Thus, on the record before us, a reasonable jury could find by clear and convincing evidence that Hernandez "consciously pursued a course of conduct knowing . . . it created a substantial risk of significant harm to others." *Quintero*, 221 Ariz. 536, ¶ 16 (quoting *Gurule*, 152 Ariz. at 602); *cf. Newman v. Select Specialty Hosp.-Ariz., Inc.*, 239 Ariz. 558, ¶ 16 (App. 2016)

(remanding for new trial after trial court granted judgment as matter of law on punitive damages in action brought for injuries plaintiff sustained while in care of defendant hospital).[5]  The respondent judge erred by concluding otherwise.  *See Maycock*, 207 Ariz. 495, ¶ 14.

**Disposition**

**¶28**        For the foregoing reasons, we accept special-action jurisdiction and grant relief.  We vacate the respondent judge's grant of defendants' motion for partial summary judgment and remand for further proceedings.

---

[5]Our decision does not foreclose defendants' ability to move for judgment as a matter of law pursuant to Rule 50, Ariz. R. Civ. P., if warranted by the evidence presented at trial.